569 P.2d 421

**FIRST NATIONAL BANK IN ALBU-QUERQUE, Plaintiff-Appellee and Cross-Appellant,**

v.

**ENERGY EQUITIES INCORPORATED, formerly Greater Southwest Corporation, Bernard C. Luce, Jr., D. W. Falls, James A. McKinnon, G. R. McNary, Estate of Henry S. Birdseye, and Geomet, Inc., Defendants-Appellants and Cross-Appellees.**

**No. 2769.**

Court of Appeals of New Mexico.

Aug. 23, 1977.

Martin E. Threet, Threet, Threet, Glass, King & Maxwell, Albuquerque, for appellants Falls & McKinnon.

Thomas L. Bonham, Albuquerque, for appellant Geomet, Inc.

Quincy D. Adams, Adams & Foley, Albuquerque, for appellant G. R. McNary.

William A. Sloan, Robert M. St. John, and Victor R. Marshall, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for appellee.

### OPINION

LOPEZ, Judge.

The First National Bank in Albuquerque (hereinafter referred to as the bank) brought an action in the district court of Bernalillo County to recover on a promissory note and various guaranties. The note was executed by Energy Equities, Incorporated (hereinafter referred to as Energy Equities), formerly Greater Southwest Corporation, and guaranteed by Barnard C. Luce, Jr., James A. McKinnon, G. R. McNary, D. W. Falls, Henry S. Birdseye, and Geomet, Inc. (hereinafter referred to as the guarantors). Judgment was entered against Energy Equities and Barnard C. Luce by default. Some of the remaining guarantors cross-claimed against each other and counterclaimed against the bank. By agreement of counsel, the case was submitted to the court without a jury upon documentary evidence, depositions and exhibits. The court entered judgment against the guarantors for $100,000.00, interest at seven and one-half percent, plus attorneys' fees and court costs. On the cross-claims, the court granted each guarantor a right of contribution against the other guarantors along with a right of indemnity against the primary debtor, Energy Equities. The defendants' counterclaims against the bank were dismissed. The court retained jurisdiction for the purpose of determining cross-claims of Falls, McKinnon, McNary, and Geomet for indemnity and damages, on the grounds of fraud, against the defendant Luce.

The guarantors, with the exception of Energy Equities, Luce, and the estate of now deceased Birdseye, have appealed the judgment in favor of the bank. The bank has cross-appealed the trial court's judgment as to the rate of interest which was granted.

The issues on appeal are: (1) the liability of the guarantors to the bank; (2) the liability of the guarantors to each other; and (3) whether the bank is entitled to ten percent interest on the unpaid balance of the note.

*Facts*

On January 7, 1971, Energy Equities executed a promissory note for $100,000.00 plus interest at eight percent, payable to the bank on May 7, 1971. On the same day the defendant-guarantors, Luce, Falls, McKinnon, McNary, and Birdseye executed a "Continuing Guaranty" covering the credit extended to Energy Equities and any renewals thereof. In a typewritten addendum those guarantors agreed "it is expressly understood that this guaranty is to apply to renewals of the original note." In Section 4 of the continuing guaranty those same guarantors authorized the bank to change or renew the original credit:

"(4) Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon . . . .."

The original note was not paid when due but was renewed several times by the bank. The last renewal note executed by Energy Equities is dated June 5, 1972, for $100,000.00 plus interest at seven and one-half percent payable December 4, 1972. In the event of default the note provided for interest at the rate of ten percent on the unpaid balance. The note also provided for payment of all costs of collection including reasonable attorneys' fees not to be less than ten percent of the unpaid amount of the note at the time of enforcement.

On May 4, 1972, Geomet executed a "Continuing Guaranty" of Energy Equities' indebtedness to the bank, presumably to include the renewal note dated June 5, 1972, because the form which Geomet signed was identical to the form signed by the previous guarantors; i. e., it contained a Section 4 clause expressly covering renewals of the original credit. The continuing guaranty which Geomet signed did not contain the typewritten addendum expressly covering renewals of the original note. The district court determined that Geomet was acting as another guarantor, in addition to the other guarantors, not as a substitute for any guarantor.

The renewal note was not paid when due on December 4, 1972, and was in default at that time although interest accrued up to that date was paid.

We are going to discuss the appeals in three groups: McKinnon and Falls, McNary, and Geomet. We will discuss McKinnon and Falls' points in order.

### (1) *McKinnon-Falls Appeal*

#### *Point I*

■ In their first point McKinnon and Falls declare the standard of review to be applied by an appellate court. Because the case was tried on documentary evidence, McKinnon and Falls ask this Court to make independent findings of fact. The standard of review in cases like this was carefully set forth by the Supreme Court of New Mexico in *Valdez v. Salazar*, 45 N.M. 1, 107 P.2d 862 (1940) where the Court said:

"From a consideration of the authorities cited, we deduce the following: Where all or substantially all of the evidence on a material issue is documentary or by deposition, the Supreme Court will examine and weigh it, and will review the record, giving some weight to the findings of the trial judge on such issue, and will not disturb the same upon conflicting evidence unless such findings are manifestly wrong or clearly opposed to the evidence."

In *Kosmicki v. Aspen Drilling Co.*, 76 N.M. 234, 414 P.2d 214 (1966) the Supreme Court reaffirmed the review procedure outlined in *Valdez*. The Court said:

"We have never said, and we never intended to suggest, that the review in this court in cases where the proof was all documentary should be in the nature of a de novo trial, nor have we ever intimated that the findings of the trial court were to be totally disregarded. . . .

". . .

"It should be amply clear that we have never countenanced a review of documentary evidence to the exclusion of the findings. None of the cases cited above have so indicated. To the contrary, we may only review the documentary evidence to determine whether it supports the findings, and we will not disturb the findings 'unless such findings are manifestly wrong or clearly opposed to the evidence.' *Valdez v. Salazar*, supra."

We follow this well-established rule and give some weight to the district court's findings, *Martinez v. Universal Constructors, Inc.*, 83 N.M. 283, 491 P.2d 171 (Ct. App.1971), even though we are not bound by the findings. *House of Carpets, Inc. v. Mortgage Investment Co.*, 85 N.M. 560, 514 P.2d 611 (1973); *State ex rel. State Highway Commission v. Trujillo*, 82 N.M. 694, 487 P.2d 122 (1971).

#### *Point II*

■ McKinnon and Falls contend that the bank released the guarantors, or rather the court erred by adopting a finding which determined that no agreement was ever reached by the bank to release McKinnon and Falls. Finding of fact no. 9 reads:

"9. At various times some of the defendants discussed with FNBIA [First National Bank in Albuquerque] the possibility that FNBIA would release one or more of the defendants. However, no binding agreement or meeting of the minds was ever reached by FNBIA and the defendants, and FNBIA never released or contracted to release any of the defendants."

We have examined the evidence and we are unable to find any definite agreement that McKinnon and Falls were to be released. There is evidence that McKinnon and Falls attempted to be relieved of the guaranty agreement, but there is no evidence that an agreement was made.

The trial court found no binding agreement. We cannot disturb such a finding unless it is manifestly wrong because there is substantial evidence to the contrary or the finding is not supported by substantial evidence. The challenged finding is, however, supported by substantial evidence.

*Point III*

█ McKinnon and Falls argue that the court erred in findings nos. 3 and 4 and conclusion of law no. 2. Findings nos. 3 and 4 state:

"3. On or about January 7, 1971, for valuable consideration, defendants Luce, Falls, McKinnon, McNary and Birdseye properly executed and delivered to FNBIA a continuing guaranty as shown in Exhibit B to FNBIA's First Amended Complaint. Those defendants thereby guaranteed repayment of the credit extended by FNBIA to Southwest, [now known as Energy Equities], and any renewals thereof. In Section 4 of the continuing guaranty those defendants authorized FNBIA to change or renew the original credit, and in a typewritten addendum those defendants agreed that 'this guaranty is to apply to renewals of the original note'.

"4. The original note was not paid when due, and was successively renewed by FNBIA, the last renewal note being properly executed and delivered to FNBIA on or about May 4, 1972 by Energy Equities, the successor to Southwest, in the principal amount of $100,000.00 . . . .."

Conclusion of law no. 2 reads:

"2. Each of the defendants is jointly and severally liable to FNBIA for the full balance outstanding on the note shown as Exhibit A to plaintiff's First Amended Complaint, in the principal amount of $100,000.00 plus interest thereon at ten percent per annum from December 4, 1972 to date of payment to FNBIA. . . . ."

McKinnon and Falls contend that Energy Equities' initial obligation was to be for only one year, and the guarantors were therefore released by the renewals beyond the one year term. We cannot accept this assertion. The guarantee has a typewritten addendum as follows:

"This guarantee applies only to that certain Note in the amount of $100,000.00 dated January 7, 1971 and maturing on May 7, 1971, *or any renewal thereof.* Inasmuch as the Bank has given a one year commitment . . . it is expressly understood that this guaranty is to apply to *renewals* of the original note." [Emphasis added].

We do not believe the language in the guaranty contract is ambiguous. The renewals did not change the essential nature of the guaranty agreement because the agreement expressly provided for *renewals.* It is abundantly clear that the district court was correct in making the challenged findings and conclusions of law.

*Point IV*

█ McKinnon and Falls argue that the court erred in adopting finding of fact no. 11 and conclusions nos. 3 and 8. Finding of fact no. 11 is:

"11. No defendant effectively revoked his obligation to FNBIA.

Conclusions of law nos. 3 and 8 are:

"3. Additionally, each of the defendants is jointly and severally liable to FNBIA for costs of collection, including attorneys' fees, in an amount equal to ten percent of the balance outstanding on the note. . . .

"8. No defendant made an effective revocation of the obligations under the notes and the guaranties."

The defendants could not revoke the guaranties of the outstanding loan to Energy Equities. We look for guidance to 38 Am.Jur.2d Guaranty § 63 (1968). A contin-

uing guaranty would be a nullity if the guarantor could revoke it as to liability *already incurred* and not repaid. Revocation of the continuing guaranty does not affect liability for past transactions which have created a contractual relationship between guarantor and creditor. Because the bank had already loaned the $100,000.00 to Energy Equities, McKinnon, Falls, and any of the other guarantors could not revoke the guaranty of the liability which was already outstanding. This is especially true if the asserted agreement of revocation is not in writing.

■ An alternative ground for reaching the same conclusion is that the liability of the guarantor is to be determined by the express terms or plain intent of the contract. See *American Bank of Commerce v. Covolo*, 88 N.M. 405, 540 P.2d 1294 (1975). The express terms of the guaranty agreement in this case covered "renewals."

*Point V*

■ McKinnon and Falls state that the court erred in failing to make a finding on the question of the revocation of the continuing nature of the guaranty. The court made finding of fact no. 11 which is quoted under the previous point. It is argued that the material issue of the revocation was presented by requested findings of fact and conclusions of law which were rejected by the court. *Laumbach v. Laumbach*, 58 N.M. 248, 270 P.2d 385 (1954).

The evidence supports the court's finding of fact no. 11 and this finding was sufficient to answer the defendant guarantors' argument that there occurred a revocation of the continuing nature of the guaranty. Therefore, there has been no failure to make a finding on a material issue and no error. All that is required is that the district court make sufficient and proper findings of ultimate facts. *Transport Trucking Co. v. First National Bank*, 61 N.M. 320, 300 P.2d 476 (1956). Cf. *Hunker v. Melugin*, 74 N.M. 116, 391 P.2d 407 (1964); *Industrial Supply Co. v. Goen*, 58 N.M. 738, 276 P.2d 509 (1954).

*Point VI*

■ McKinnon states that the court erred in its conclusions of law nos. 6 and 7:

"6. No defendant was released or discharged by the operation of § 50A–3–118(f), N.M.S.A. (1953 Comp.).

"7. No defendant was released or discharged by the operation of § 50A–3–606, N.M.S.A. (1953 Comp.)."

These two sections of the Uniform Commercial Code, Chapter 50A, N.M.S.A. 1953 (Repl. Vol. 8, pt. 1, 1962), read as follows:

"50A–3–118. *Ambiguous terms and rules of construction.*—The following rules apply to every instrument:

". . .

"(f) *Unless otherwise specified* consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, *is binding on secondary parties and accommodation makers.* . . [Emphasis added].

"50A–3–606. *Impairment of recourse or of collateral.*—(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

"(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary . . . ."

These two sections are not concerned with guaranty contracts. Section 50A–3–102(1)(e) of the Uniform Commercial Code expressly defines an "instrument" as a negotiable instrument. The promissory note in this case may be negotiable but the guaranty contract is not a negotiable instrument because it does not meet the requirements

for negotiability. UCC § 50A–3–104. See *Associates Discount Corporation v. Elgin Organ Center, Inc.*, 375 F.2d 97 (7th Cir. 1967); *United States Gypsum Co. v. Sampson*, 496 S.W.2d 687 (Civ.App.Tex.1973).

Even if we agree with the guarantors' assertion that article three of the Uniform Commercial Code applies to the guaranty agreement, UCC § 50A–3–118(f) applies only to ambiguous terms or when not "otherwise specified." The guaranty agreement expressly specified that the guaranty would cover renewals. As for UCC § 50A–3–606(1)(a), the guaranty agreement expressly provided in Section 4 that the bank could, without notice or demand and without affecting the guarantors' liability, "release or substitute any one or more of the . . . guarantors." Moreover, the bank did not discharge any guarantor.

*Point VII*

 McKinnon and Falls attack the court's finding no. 12 which states:

"12. All guarantors, including Geomet, Inc., executed the guaranty with the understanding that, among themselves, the obligations would be shared pro rata."

As was stated in the previous point, the guaranty agreement provided that the bank could "release or substitute any one or more of the . . . guarantors." But as we have previously determined, the bank did not exercise this right and release any guarantor.

We have examined the record and this finding is supported by substantial evidence; therefore, the trial court was correct in providing for contribution.

 Finally, McKinnon objects to the bank's cross-appeal for ten percent interest. The note provided for ten percent interest after default and it was submitted to the court as evidence upon stipulation of all the parties. The court erred in not granting ten percent interest. *In Re Carson (Beavers v. Luther)*, 87 N.M. 43, 529 P.2d 269 (1974).

 We follow the law of *Sachs v. Bd. of Trustees*, 89 N.M. 712, 557 P.2d 209 (1976) and *Woodson v. Raynolds*, 42 N.M. 161, 76 P.2d 34 (1938). The rule of law from these cases is: where a conclusion conflicts with or does not follow a finding of fact, the finding of fact controls and the appellate court will apply the proper conclusion of law. In the last paragraph of the finding of fact no. 4, the court said:

"4. . . . In the event of default, the note provided for interest at 10 percent per annum on the unpaid balance. The note also provided for payment of all costs of collection, including reasonable attorneys' fees (not to be less than ten percent of the unpaid amount of the note at the time of enforcement)."

Therefore, if there is an inconsistency between the findings of fact and the conclusions of law, and the finding of fact is supported by the evidence, then a proper conclusion should follow, which in this case would be to allow the ten percent interest. The note went into default on December 4, 1972, when it was not paid off at maturity. At that time the note began to accrue interest at ten percent on the unpaid balance instead of seven and one-half percent.

 We note that the bank amended its complaint well in advance of trial. The bank's right to recover ten percent is evidenced from the note itself. An agreement to pay interest on a loan at a higher rate after default is merely contractual and does not provide for a penalty. *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), cert. denied, 361 U.S. 947, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960); *Union Estates Co. v. Adlon Construction Co.*, 221 N.Y. 183, 116 N.E. 984, 12 A.L.R. 363 (1917); *National Life Ins. Co. v. Hale*, 54 Okl. 600, 154 P. 536 (1916). Rule 54(c) of the Rules of Civil Procedure requires the trial court to award the higher interest rate and it was reversible error not to do so. [§ 21–1–54(c), N.M.S.A. 1953 (Repl. Vol. 4, 1970)]. It is the duty of the trial court to grant the relief to which a party is entitled irrespective of the prayer for relief in the pleadings.

 It is the policy of the law to freely allow amended pleadings when justice so

requires. *Constructors, LTD v. Garcia*, 86 N.M. 117, 520 P.2d 273 (1974); *Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.*, 90 N.M. 454, 564 P.2d 1336 (Ct.App. 1977); 6 Moore's Federal Practice § 54.62 (1976); N.M.R.Civ.P. 15(a) [§ 21-1-15(a), N.M.S.A. 1953 (Repl. Vol. 4, 1970)]; *Rosden v. Leuthold*, 107 U.S.App.D.C. 89, 274 F.2d 747 (1960).

 The contention that the cross-appeal is moot is without merit. See *Schlecht v. Bliss*, 271 Or. 304, 532 P.2d 1 (1975); *State v. Fernandez Co.*, 28 N.M. 425, 213 P. 769 (1923). The question is whether plaintiff's cross-appeal fits within the general rule as stated by *State v. Fernandez*, supra, or within the exception also stated in that case. The general rule is that ". . . one can not accept a benefit under a judgment and then appeal from it, where the effect of the appeal may be to annul the judgment". The exception to this rule is ". . . where there is no possibility that the appeal may lead to a result whereby the appellant may recover less than has been received under the judgment appealed from, the right to appeal is unimpaired." In this case the plaintiff's cross-appeal could not result in an annulment of the judgment or in a reduced award, on a modification to the bank's benefit. Therefore, the exception applies, and the bank is free to pursue its appeal.

### (2) *McNary Appeal*

In essence the appeal of McNary argues that all or none of the guarantors should be released. If McNary is held liable as a guarantor, it is asserted that the judgment for contribution against the other guarantors, including McKinnon and Falls, should be affirmed.

This Court's conclusion and answer to McNary is the same as the answer to McKinnon and Falls. None of the guarantors were released and the judgment regarding contribution is supported by the evidence.

Also, this Court's answer to McNary's argument regarding interest is the same as the discussion of interest under the appeal of McKinnon and Falls.

### (3) *Geomet Appeal*

Geomet was the last guarantor on the note to the bank and Geomet's appeal is directed primarily to the interest. Our answer to this contention is the same as our answer to McKinnon and Falls.

There was, in oral argument, a comment made that Geomet might have been misled by the bank. The argument has no merit because it is not established by the evidence; hence, we will not comment any further.

The judgment of the district court regarding the liability of the guarantors to the bank is affirmed. The trial court is reversed with respect to interest and the cause is remanded for the trial court to award the bank ten percent interest. The judgment of the trial court regarding contribution among the guarantors is affirmed.

IT IS SO ORDERED.

SUTIN, J., and ROY G. HILL, District Judge, concur.