641 P.2d 517

**Faye Q. HANSEN, Plaintiff-Appellee,**

v.

**SKATE RANCH, INC., Defendant-Appellant.**

**No. 5237.**

Court of Appeals of New Mexico.

Feb. 4, 1982.

Joseph Rocca, Albuquerque, for defendant-appellant.

Harold B. Albert, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendant appeals a judgment based on a jury verdict which awarded plaintiff $25,606.35 on a personal injury case. We affirm.

The defendant presents four points for reversal, 1. Mitigation of damages, 2. Respondeat superior, 3. Admissibility of evidence, and 4. Excessiveness of the award.

*Facts.*

On January 28, 1979 the plaintiff was roller skating at the Skate Ranch in Albuquerque. The plaintiff claims that a man skating in front of her suddenly executed a jump turn and fell down and that she fell over him. As a result of her fall plaintiff suffered a severe fracture of her left wrist. The plaintiff sued Skate Ranch, Inc., for negligence and failing to maintain its premises or to correct or warn of dangerous conditions. At trial she also claimed that the defendant was liable for her injuries on the theory of respondeat superior, because Sparky Baker, the man she claims caused her to fall was an employee of the defendant. After a trial on the merits the jury awarded the plaintiff $25,606.35. The jury indicated by special interrogatory that the defendant was 90% negligent and plaintiff was 10% negligent. There was no indication by the jury on which theory of liability it based its decision or what reasoning it apportioned the negligence. The jury found that total damages were $28,451.50, therefore the plaintiff's award was 90% of that amount.

*Mitigation of damages.*

The defendant requested instruction No. 1, consistent with N.M.U.J.I.Civ. 18.11, N.M.S.A. 1978 (Repl.Pamph.1980), which states:

> In fixing the amount of money which will reasonably and fairly compensate plaintiff, you are to consider that an injured person must exercise ordinary care to minimize or lessen his damages. Damages caused by his failure to exercise such care cannot be recovered.

The defendant claims that the failure of the court to grant this instruction justifies our reversal of the verdict.

Defendant claims that plaintiff failed to mitigate her damages because she did not

continue to do exercises at home to strengthen her wrist. There was testimony that the plaintiff went for physical therapy for several months after her arm had healed. The doctor allowed her to stop therapy at that time and recommended that she continue exercises at home. She testified that she exercised at home "maybe twice a week" and that Dr. Woolson, her treating physician, did not give her a set regime for exercising but told her to "do what you can at home and just hope that it gets stronger as time goes by." Dr. Woolson testified that the loss of the strength to her left wrist and the physical deformity was permanent as a reasonable medical probability; that plaintiff was a very cooperative patient and that he recommended continuing exercises at home unless she suffered discomfort from the exercises. The defendant claims that plaintiff did not continue her exercises at home and that Dr. Woolson had testified that if the plaintiff had faithfully performed her exercises that she could expect to regain substantially all of her strength. Based upon the latter alleged statement of Dr. Woolson, the defendant contends that the court erred in refusing his instruction on mitigation of damages because there was substantial issue of fact as to the prognosis of Dr. Woolson. We disagree.

In the first place, the defendant misquotes and misinterprets the testimony of Dr. Woolson. We fail to find in the record any opinion by Dr. Woolson based on medical probability that any condition relating to the strength of the wrist, or any condition of the wrist itself was caused or aggravated by the failure of plaintiff to reasonably take care of her injuries. There was medical testimony that the fracture had caused shortening of the bone resulting in physical deformity and that the deformity was permanent. The trial court denied the tender of the instruction in question and we are quoting verbatim its reasons:

> I think it would create a false issue, based on the testimony in the case. The testimony is that the Plaintiff did not break off treatment prematurely. She did not abandon the doctor's program.

In fact, she went along with the therapy and the other requested treatment programs until the doctor himself felt that she could be turned loose on her own, more or less, and allowed to use her own discretion basically in the use of any exercise balls or anything, and that she had basically reached a recovery probably as good as she was going to. But I think this is the kind of damage instruction we frequently do give in situations where a patient had abandoned treatment or has otherwise violated the instructions of a doctor, and I don't see that in this case. I think it would be a false issue.

The Committee Comment to Instruction No. 18.11 states, in part:

> The award should not include any sums for physical or mental pain and suffering or loss of earnings caused by failure to reasonably care for injuries sustained and this would include negligence in failure to consult a doctor, to follow a doctor's advice, to promptly see a doctor or to otherwise care for the injuries. *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444 (Tex.1967).

In *Rutledge v. Johnson*, 81 N.M. 217, 465 P.2d 274 (1970), the New Mexico Supreme Court stated that "[u]nder the doctrine of avoidable consequences a person injured by the tort of another is not entitled to damages for harm which he could have avoided by the use of due care after the commission of the tort. (citations omitted)." In the case cited by the Committee Comment, *Moulton v. Alamo Ambulance, supra*, the Texas Supreme Court held that the trial court erred by failing to give an affirmative exclusionary instruction that a damage award "should not include any sum for physical and mental pain and suffering, loss of earnings, etc., if any, proximately caused by failure of an injured person to care for and treat his injuries, if any, as a reasonable prudent person would in the exercise of ordinary care under the same or similar circumstances. (citations omitted.)" In that case, the plaintiff injured his knee in an automobile accident. His doctor prescribed "heat, rest and elevation of the leg,"

490

and advised the plaintiff "to stay off the knee and take care of it." There was testimony to "support a reasonable conclusion that Moulton's knee injury would probably have healed within a brief period of time if he had followed his doctor's advice." Plaintiff's job included getting down on his knees to service vending machines. He continued to perform these duties after the accident, and badly aggravated his injury. In the case at bar, plaintiff did not do anything to aggravate her wrist injury; she underwent physical therapy for months, stopping only with her doctor's approval.

■ The matter of whether the court should have given the instruction is a question of law to be decided by the trial court based upon the facts and the evidence. The burden is on the defendant to prove by substantial evidence that the problems suffered by plaintiff would have been alleviated by continued exercises. Absent such showing the defendant is not entitled to the instruction. See, *Terrel v. Duke City Lumber Company*, 86 N.M. 405, 524 P.2d 1021 (Ct.App.1974); *LaBarge v. Stewart*, 84 N.M. 222, 501 P.2d 666 (Ct.App.1972).

■ We conclude that the defendant failed to present substantial and sufficient evidence to justify submission of his requested instruction of mitigation to the jury. The record further shows that the plaintiff followed the advice of her doctors as much as she could; she did not do anything to aggravate her injuries; she followed all the medical procedures medically recommended and she reasonably cared for her injuries.

*Respondeat superior.*

The defendant challenges the judgment on the theory of respondeat superior.

■ The defendant moved for a directed verdict at the close of plaintiff's case and at the close of all the evidence on the theory of respondeat superior. Both motions were denied by the trial court. When reviewing a motion for directed verdict, this court "must review the evidence in the light most favorable to plaintiff and disregard

any evidence favorable to defendant ...." *F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979). A directed verdict is appropriate only when reasonable minds cannot differ on the conclusion to be reached under the evidence. *Owen v. Burn Const. Co.*, 90 N.M. 297, 563 P.2d 91 (1977).

The defendant states that New Mexico case law via *White Auto Stores v. Reyes*, 223 F.2d 298 (10th Cir. 1955), sets out that an employee's action is within the scope of his employment if, 1) it was something fairly and naturally incident to the master's business, and 2) it was done while the servant was engaged in his master's interest. Defendant argues that, under this test, Sparky Baker could not possibly have been acting within the scope of his employment on the night in question, because he was not wearing the red vest worn by floor guards while on duty, and because floor guards are not allowed to jump or do tricks on duty.

However, the court in *White* goes on to state that:

For the master to escape liability, it must be shown that the servant, when the wrongful act was committed, had abandoned his employment and was acting for a purpose of his own which was not incident to his employment. If the injurious act is not shown to be separate and independent transaction, the master is not relieved because the servant in some respect acted beyond his authority. A servant usually is not employed to be negligent, but this does not mean that a negligent act is outside the scope of his employment. The master is liable if the act was incident to the ultimate purpose of the servant's employment. (citations omitted).

■ Plaintiff argues that the question whether Sparky Baker's acts were incident to the ultimate purpose of the employment was a fact question for the jury, and that there was adequate substantial evidence of an employment relationship and the course and scope of that employment to create an issue for the jury.

She cites as evidence portions of Sparky Baker's testimony:

Q. Now, you were at the Skate Ranch on Sunday, January 28, 1979; is that right?

A. Yes.

Q. And, you were helping out that night, as you put it?

A. More than likely, yes.

. . . . .

Q. You were working as a floor guard that night?

A. No, I was helping out. I didn't have a vest on.

Q. Is that the only difference, that you didn't have a vest on?

A. Yes.

Q. Otherwise, you were out there to help monitor on behalf of the Skate Ranch; is that right?

A. Not on behalf of them, no. It wasn't crowded, and I wasn't actually working. I was helping them. But if I'm skating and doing tricks in the center, as you say, and I see somebody doing something wrong, naturally I'm going to go up and correct them.

Q. You were being paid for helping out, weren't you?

A. Of course.

. . . . .

Plaintiff argues that the conflicting evidence produced at trial was properly resolved by the jury. She further argues that, even if there was not sufficient evidence to create an issue of fact, defendant showed no prejudice resulting from denial of its motion for directed verdict. She bases this argument on defendant's failure to request a special interrogatory indicating on which theory of liability the jury based its decision, claiming that defendant cannot prove prejudice if it cannot show that the jury based its decision on the theory of respondeat superior.

We conclude that the trial court did not err in refusing to grant the defendant a directed verdict on the issue of respondeat superior.

*Admissibility of testimony.*

The defendant contends on appeal that the trial court abused its discretion in allowing two witnesses, the plaintiff's husband, Mr. Hansen and another witness Ms. Ayres-Hurley to testify as to their opinion on the safety procedures used by the defendant on the night of the accident.

Mr. Hansen gave the opinion that "there were no obvious efforts to have any safety precautions that I was aware of." Mr. Hansen's testimony was admitted under N.M.R.Evid. 701, N.M.S.A. 1978, which provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

A lay witness under Rule 701 can testify as to his opinions based on personal perceptions. *Jesko v. Stauffer Chemical Company,* 89 N.M. 786, 558 P.2d 55 (Ct.App. 1976). The witness' lack of expertise in the area of testimony goes to weight of the evidence, not to its admissibility. *State v. Myers,* 88 N.M. 16, 536 P.2d 280 (Ct.App. 1975). It is well known rule in the State of New Mexico that the admissibility of lay opinion testimony is within the discretion of the trial court and an appellate court will not overturn the decision of the trial court absent an abuse of any discretion. *State v. Myers,* supra. A key factor in determining admissibility is personal observation by the witness. *Estrada v. Cuaron,* 93 N.M. 283, 599 P.2d 1080 (Ct.App.1979).

With this rule in mind to guide us we view the evidence pertinent in the record to determine if the court abused its discretion.

Mr. Hansen was skating at the defendant's place with his wife, the plaintiff, on the night of the accident. He did not actually witness the accident because he had stepped outside for a few minutes to smoke, but he had been able to observe the safety procedures at the Skate Ranch dur-

ing the course of the evening. Mr. Hansen is an experienced skater, he is the chief of police in Albuquerque, with 20 years police experience as well as special training in safety procedures and accident investigation. The fact that he did not see the accident would not invalidate his observation of safety procedures throughout the evening.

Based upon the rules that we have stated above and the evidence we have quoted we believe and conclude that the court properly admitted testimony of Mr. Hansen.

The defendant further contends that the court erred in allowing Ms. Ayres-Hurley to testify. The main challenge of the defendant to her testimony is that she did not qualify as an expert. Defendant argues that the testimony of this witness was admitted as an expert opinion. The plaintiff argues that like Mr. Hansen's opinion it was admitted as a lay observer under Rule 701. We have searched the record and we conclude that it was admitted under Rule 701, that of a lay witness. That being the case, the requirement of personal observation and an aid to the determination of the facts are also applicable to this testimony. Ms. Ayres-Hurley was an experienced skater, she was skating at the Skate Ranch on the night of the accident, and she is a lawyer and an insurance adjuster. Therefore, we conclude that the court was correct in allowing her to testify under Rule 701. However, assuming arguendo that she was allowed to testify as an expert witness under Rule 701, the defendant has the burden of proof to show prejudice and this she has failed to do. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970); *Proper v. Mowrey*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977). We also conclude that her testimony was cumulative to that of Mr. Hansen's and that there was other substantial evidence upon which the jury could have found that the defendant failed to properly maintain and supervise its premises. So even if there was error, the error was harmless. We conclude that the court was correct in allowing the admissibility of the testimony of Ms. Ayres-Hurley.

*Excessiveness of the award.*

The defendant challenges the verdict of the jury as being excessive. We disagree. It is well settled in New Mexico that a damage award will not be held excessive except in extreme cases. *Biesecker v. Dean*, 86 N.M. 564, 525 P.2d 924 (Ct.App. 1974), reversed on other grounds, 87 N.M. 389, 534 P.2d 481 (1975). Excessiveness is determined in two ways:

(1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award; and, (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder. (citations omitted).

*Chavez v. Atchison, Topeka and Santa Fe Railway Co.*, 77 N.M. 346, 423 P.2d 34 (1967); *Sweitzer v. Sanchez*, 80 N.M. 408, 456 P.2d 882 (Ct.App.1969). With these rules in mind, we view the evidence in the light most favorable to the plaintiff to determine if there is any evidence of excessiveness. The plaintiff claimed medical expenses and loss of wages as elements of damages. The medical expenses of $1881.50 were paid by an insurance company. The fact that the medical expenses had already been paid does not invalidate her claim for medical expenses. *Bailey v. Jeffries-Eaves, Inc.*, 76 N.M. 278, 414 P.2d 503 (1966). She testified at trial that she planned to reimburse the insurance carrier for its payment of her medical expenses, if she was awarded damages. She missed two months of work as a secretary and bookkeeper after her injury. Her employer paid her salary during those two months, which amounted to about $1600.00. These lost wages are also a proper element of damages. *Martinez v. Knowlton*, 88 N.M. 42, 536 P.2d 1098 (Ct.App.1975).

A plaintiff may recover medical expenses and lost wages incurred by defendant's negligence, even though plaintiff may have had such items paid for by insurance or otherwise. Such a payment should not diminish the amount of damages recov-

ered by the plaintiff . . . . (76 N.M. at 290, 414 P.2d 503.)

The plaintiff had to replace her car, at a cost of about $2,000 for another one with power steering so that she could drive it. She had to install an automatic garage door opener for $130.00 because she could not operate the garage door manually.

She suffered permanent impairment of her wrist, including permanent deformity and continuing pain, discomfort and weakness in the wrist. There is testimony that her wrist will deteriorate with time, and may develop arthritis. She has suffered a permanent total disability from her occupation as a secretary, and a partial permanent disability from performing any other occupation to which she was suited by age, education, and training. She is unable to perform many household chores which she did before.

We hold that based upon the law as we have stated above and the evidence, that the award was not excessive and that the trial court did not err in setting it aside.

The judgment of the trial court is affirmed. The appellate costs are to be paid by the defendant.

IT IS SO ORDERED.

SUTIN, J., concurs.

HENDLEY, J., concurs in result only.