1997-NMCA-105

946 P.2d 650

**Laura Lee SANCHEZ, Plaintiff–Appellant,**

v.

**Robert WILEY and Western Excavators, Defendants–Appellees.**

**No. 17379.**

Court of Appeals of New Mexico.

Sept. 19, 1997.

49

Joseph William Reichert, Albuquerque, for Appellant.

Sarah M. Bradley, Rosemary Dillon, Bradley & McCulloch, P.A., Albuquerque, for Appellees.

## OPINION

WECHSLER, Judge.

1. Plaintiff Laura Lee Sanchez appeals the trial court's ruling granting the motion for directed verdict of Defendants Robert Wiley and Western Excavators with respect to Plaintiff's claim for punitive damages. Plaintiff also appeals the trial court's ruling which precluded references to Defendant Wiley's driving record for purposes of impeachment. We reverse on the first issue and affirm on the second.

*Facts*

2. Plaintiff was driving on a residential street when Wiley struck her vehicle while operating a backhoe. Two witnesses heard the crash but did not actually see the accident. Plaintiff's friend, seventeen-year-old Ulises Hernandez, was one of those witnesses. Hernandez confronted Wiley face-to-face after the accident and smelled alcohol on Wiley. Hernandez also noticed that Wiley staggered and that his speech was slurred. Hernandez testified that he had seen intoxicated persons before and that, in his opinion, Wiley was drunk.

3. Plaintiff filed a claim for personal injury. She deposed Wiley and asked him in his deposition about previous arrests for driving while intoxicated (DWI). He admitted to having three prior DWI convictions and stated that he had not driven while his license was suspended. Prior to trial, the trial court granted Defendants' motion in limine preventing Plaintiff from inquiring into Wiley's "former and subsequent DWIs and his for-

mer or subsequent drinking habits." The order also stated that Plaintiff is "prohibited from impeaching ... Wiley with driving records or drinking habits." The trial court's order further provided that "Defendants' Motion in Limine concerning ... Wiley's driving on a revoked license is granted subject to the right of Plaintiffs' counsel to ask ... Wiley at trial whether he had a valid driver's license ... at the time of the accident and ... whether the accident would have occurred had ... Wiley not been on the roadway with a front end loader."

Thereafter, Plaintiff obtained information from the New Mexico Technet/Legalnet system that, just prior to his deposition, Wiley had received two additional DWI convictions and had driven with a suspended license, resulting in a suspension of his driving privileges for one hundred years. She filed a motion to reconsider the order in limine which the trial court denied.

4. Plaintiff argued in closing that evidence of Wiley's negligence included indications that he was intoxicated. At the close of Plaintiff's case, the court granted Defendants' motion for a directed verdict on the claim for punitive damages. The jury returned a verdict on Plaintiff's claim for compensatory damages for $29,453.00. It attributed twenty-five percent of fault to Plaintiff, reducing the award to $22,089.75, which Defendants paid to Plaintiff. After accepting the payment, Plaintiff filed this appeal.

*Waiver of Right to Appeal*

5. Defendants argue that Plaintiff waived her right to appeal by accepting payment of the judgment. They claim that the punitive damages issues and the liability issues are so closely related that they will be prejudiced if Plaintiff is allowed a new trial on the punitive damages issue.

■ 6. The general rule is that a party cannot accept the benefit of a judgment and then appeal from the judgment when the effect of the appeal could be to annul the judgment. *See Courtney v. Nathanson,* 112 N.M. 524, 525–26, 817 P.2d 258, 259–60 (Ct. App.1991); *First Nat'l Bank v. Energy Equities Inc.,* 91 N.M. 11, 18, 569 P.2d 421, 428

(Ct.App.1977). An exception to the general rule is that, if there is no possibility that the appeal may cause the plaintiff to recover less than Plaintiff has received under the judgment, the right to appeal is not impaired. *See First Nat'l Bank,* 91 N.M. at 18, 569 P.2d at 428. The exception applies in this case. The only issue raised on appeal concerns punitive damages. No matter how that issue is resolved, it cannot affect the amount or propriety of the compensatory damages award. *Cf. Flores v. Baca,* 117 N.M. 306, 314, 871 P.2d 962, 970 (1994) (compensatory damages awarded to plaintiff determined to be res judicata in retrial on punitive damages issue). Therefore, Plaintiff did not waive her right to appeal with respect to her punitive damages claim.

*New Trial on Punitive Damages Claim*

7. Whether Plaintiff is entitled to another trial on punitive damages is a separate but related question. Defendants argue that they would suffer prejudice if Plaintiff is allowed to bring her claim for punitive damages at a new trial.

■ 8. It is common pleading for a plaintiff to request relief under more than one claim or theory of recovery. At trial, a plaintiff may be successful on some claims or theories, and, on appeal, may request a new trial on the unsuccessful theories or claims. Our Supreme Court has held that such a "partial" retrial is allowable if no prejudice will result and the issues are not so connected that error committed in the first trial "infects" any verdict entered against any party. *See Buffett v. Vargas,* 121 N.M. 507, 513–14, 914 P.2d 1004, 1010–11 (1996); *Flores,* 117 N.M. at 314–15, 871 P.2d at 970–71 (new trial on punitive damages appropriate if no prejudice to defendant arises from fact of compensatory award to plaintiff).

■ 9. As we understand *Buffett* and *Flores,* the test for determining whether the issue raised on appeal "infects" the possible retrial, thus prejudicing the defendant, is similar to the test used to decide whether accepting payment of the judgment waives the right to appeal. That is, if the issue raised on appeal has an effect or impact solely on that issue, and could have no effect

or impact on the issues not included in the appeal, there is no "infection" and a new trial limited to the appealed issues is allowed. This doctrine is in accord with the law followed in other states. *Compare Shortridge v. Rice,* 929 S.W.2d 194, 198 (Ky.Ct.App. 1996) (limiting scope of retrial to punitive damages claim where plaintiff wrongfully deprived of jury instruction on punitive damages, issue of punitive damages was distinct and severable from issue of liability, liability was not challenged on appeal, and retrial would not result in injustice); *Roberts v. Lane,* 210 Ga.App. 10, 435 S.E.2d 227, 229 (1993) (ruling that husband entitled to new trial in defamation case because jury awarded compensatory and punitive damages against both husband and wife on erroneous theory that the two were jointly liable); *and Honeywell v. Sterling Furniture Co.,* 310 Or. 206, 797 P.2d 1019, 1023 (1990) (limiting scope of retrial to punitive damages claim where compensatory damages and liability not challenged on appeal and error affected only punitive damages claim), *with Stroud v. Elliott,* 316 S.C. 242, 449 S.E.2d 261, 262 (App.1994) (error in trial on actual damages requires retrial on all issues, including punitive damages issue, because punitive damages fall when actual damages have been reversed).

10. We do not agree that Defendants would suffer prejudice from the grant of a new trial on the punitive damages claim. The focus of the retrial would be different from the focus of the trial on compensatory damages, at which the jury decided the issues of injury, loss, and allocation of fault. At a trial on punitive damages, the emphasis would be on Defendants' behavior and whether that behavior should be punished. The evidence to be presented would require a jury to decide whether Defendants' behavior rose to the level necessary to justify an award of punitive damages, not on the loss to Plaintiff. Prejudice does not result merely because there may be overlap in the evidence, particularly when, as in this case, there is no possibility that the error alleged on appeal (failing to allow the punitive damages issue to go to the jury) could have affected the compensatory damages award. As the two issues are separate and distinct,

the error committed by the trial court in granting a directed verdict would not "infect" the issue of punitive damages. *See Buffett,* 121 N.M. at 513–14, 914 P.2d at 1010–11.

11. Defendants contend that prejudice can be presumed because Plaintiff presented evidence of Wiley's intoxication at the first trial. By hearing the evidence, Defendants argue, the jury may have been influenced to give a higher award on compensatory damages or to assign a greater degree of fault to Defendants than it would have been inclined to do had the evidence been precluded.

12. However, it was proper for the jury to consider evidence that Wiley was intoxicated in determining the percentage of his liability. *See Buffett,* 121 N.M. at 510, 914 P.2d at 1007 (evidence of intoxication relevant to jury consideration of whether defendant could have avoided the accident by exercise of due care). In the case on appeal, the jury determined that Defendants were 75% at fault. Defendants have not offered any concrete indication that the jury increased the percentage of fault based on the evidence of intoxication. The jury was instructed that, if it decided in favor of Plaintiff on the question of liability, it must fix the amount of compensatory damages according to the elements of damages that had been proved by the evidence. The jury instructions did not provide room for the jury to award damages not proved by the evidence. Defendants' argument rests on an assumption that the jury would be likely to ignore the instructions, and we will not make such an assumption. *See State v. Gonzales,* 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) (jury is presumed to have followed jury instructions).

13. In addition, Defendants themselves requested the directed verdict on Plaintiff's punitive damages claim. What they sought, in effect, was to bifurcate Plaintiff's issues by obtaining a directed verdict on one claim and then to attempt to deny Plaintiff the right to obtain a new trial on the issue. *See Proper v. Mowry,* 90 N.M. 710, 720, 568 P.2d 236, 246 (Ct.App.1977) (when error claimed arose out of plaintiff's requested instructions, plaintiff will not profit from own error on appeal); *Platero v. Jones,* 83 N.M. 261, 261–62, 490

P.2d 1234, 1234–35 (Ct.App.1971) (plaintiff not permitted to complain on appeal because trial court's findings which he requested disposed of his asserted claims). We do not view a new trial on the issue of punitive damages as prejudicial to Defendants when they have set the stage for the argument through their own trial strategy.

*Directed Verdict on Punitive Damages*

■ 14. Plaintiff argues that the trial court erred in granting Defendants' motion for a directed verdict on her claim for punitive damages. On appeal, we view the evidence in the light most favorable to the non-moving party, indulging every reasonable inference and ignoring conflicts in the evidence unfavorable to that party. *See Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 437, 872 P.2d 852, 855 (1994). We apply this appellate standard so as to minimize interference with the jury's function and not erode a party's right to trial by jury. *See Klopp v. Wackenhut Corp.*, 113 N.M. 153, 155, 824 P.2d 293, 295 (1992). Even in cases in which the possibility of recovery may seem remote, a plaintiff may not be deprived of a jury determination unless there is "no pretense of a prima facie case" and no substantial evidence supporting one or more essential elements of the case. *Id.*

■ 15. Justification for an award of punitive damages can be found when a wrongdoer's conduct rises to a willful, wanton, malicious, reckless, oppressive, or fraudulent level. *See Gonzales v. Surgidev Corp.*, 120 N.M. 133, 145, 899 P.2d 576, 588 (1995). With respect to a punitive damages claim, "reckless" conduct means intentionally doing an act with utter indifference to the consequences. *Id.*; UJI 13–1827, NMRA 1997. Evidence showing that a wrongdoer was intoxicated while driving is a sufficient basis for imposing punitive damages. *See DeMatteo v. Simon*, 112 N.M. 112, 115, 812 P.2d 361, 364 (Ct.App.1991); *Svejcara v. Whitman*, 82 N.M. 739, 740, 487 P.2d 167, 168 (Ct.App.1971).

■ 16. Plaintiff presented evidence, through Hernandez, that Wiley appeared to be under the influence of alcohol immediately following the accident. Over objection by Defendants, the trial court allowed Hernandez to give his opinion about whether Wiley was under the influence of alcohol. *Cf. Hickey v. Griggs*, 106 N.M. 27, 29, 738 P.2d 899, 901 (1987) (trial court's finding that defendant was competent to enter into contract was supported by real estate broker's testimony that defendant did not appear intoxicated).

■ 17. Lay opinion testimony is admissible within the discretion of the trial court. *See Hansen v. Skate Ranch, Inc.*, 97 N.M. 486, 491, 641 P.2d 517, 522 (Ct.App. 1982). Under Rule 11–701, opinions of lay witnesses are admissible if they are "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Rule 11–701, NMRA 1997. The purpose of the limitation of Rule 11–701 is to avoid unreliable testimony which does not have a factual basis. *See generally* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.02 (Joseph M. McLaughlin, ed., 2d ed. 1997). To lay a foundation for the admission of Rule 11–701 testimony, the proponent is required to show that the witness has first-hand information which is rationally connected to the opinion formed. *See State v. Luna*, 92 N.M. 680, 684, 594 P.2d 340, 344 (Ct.App.1979).

■ 18. On appeal, Defendants argue that Hernandez, a seventeen-year-old teenager at the time of the accident, was not qualified to give an opinion about Wiley's level of sobriety. At trial, Defendants objected on the grounds that Hernandez was not an expert on intoxication, not because Hernandez, a minor, was incompetent to testify. However, as Defendants had the burden of showing incompetency, the incompetency of a witness is a trial issue which may not be raised for first time on appeal. *See State v. Manlove*, 79 N.M. 189, 190, 192, 441 P.2d 229, 230, 232 (Ct.App.1968).

■ 19. Regardless, we conclude that the trial court could properly determine that Hernandez' opinion testimony was admissible under Rule 11–701. As a predicate to his opinion, he testified to his observations and

that he had seen other persons under the influence of alcohol. The opinion he expressed was rationally based on his perceptions and experience with intoxicated persons, was helpful to determine the issue of liability, and would be helpful to determine whether punitive damages should be awarded. *See* Rule 11–701(A); *Hansen,* 97 N.M. at 491–92, 641 P.2d at 522–23. Given the foundation provided for Hernandez' testimony, the trial court did not abuse its discretion by admitting his opinion of intoxication. Hernandez' lack of expertise was properly addressed as affecting the weight of his testimony, not its admissibility. *See Hansen,* 97 N.M. at 491, 641 P.2d at 522.

20. With the testimony of Hernandez, Plaintiff presented sufficient evidence to allow the issue of punitive damages to be submitted to the jury. The trial court erred in granting Defendants' motion for directed verdict.

*Use of Defendant's Driving Record for Impeachment Purposes*

■ 21. Plaintiff claims that the trial court erred in refusing to allow her to make reference to Wiley's driving record for purposes of impeachment. According to Plaintiff, Wiley gave false answers during his deposition. Specifically, Plaintiff states that Wiley admitted to having three prior DWI convictions when, at the time of his deposition, he had actually received five prior DWI convictions. In addition, Plaintiff asserts that Wiley testified that he did not drive while his driver's license was suspended, although, at the time of his deposition, he had violated the suspension and his license had been revoked for one hundred years. We review evidentiary rulings by the trial court under an abuse of discretion standard. *See State v. Hoeffel,* 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct.App.1991).

■ 22. According to the deposition transcript, it appears that in context Wiley did not give false answers to the specific questions asked.

Q. Did you have a valid driver's license at the time of this collision?

A. No, sir.

Q. Where was that license?

A. It had been revoked.

Q. Now we're probably getting into the second revocation of your license; is that correct?

A. Right.

Q. Sometimes we use words interchangeably, and talk about suspended and revoked. Do you mean those things to equal the same thing?

A. Yes, sir.

Q. So you had your license suspended for a year after your second DWI. Did you ever get your license back after that?

A. Yes, sir.

Q. So it was around 1992?

A. '92 or '93.

Q. Then what happened?

A. Then I got another DWI.

Q. So you've had three DWI's?

A. Yes, sir.

Q. What happened then?

A. They revoked my license for five years.

Q. How did you get down here today?

23. From the line of questioning, we perceive that Wiley was responding to the questions directed at the period of time just prior to the accident. Nothing stated indicates that Wiley was intentionally withholding information regarding his later DWI convictions or his later license revocation. Plaintiff did not ask about the period of time between the accident and the deposition. Thus, Wiley did not have reason to refer to the DWI convictions or the license revocation. Under these circumstances, the trial court did not abuse its discretion by refusing to allow the deposition to be used to impeach Wiley. *See Bourgeous,* 117 N.M. at 440, 872 P.2d at 858 (admission or exclusion of evidence is within sound discretion of trial court).

*Conclusion*

24. Based on the foregoing, we hold that Plaintiff did not waive her right to appeal the

trial court's decision. We affirm the trial court's decision with respect to the use of the deposition to impeach Wiley. We reverse the trial court's decision to grant a directed verdict and remand to the trial court for trial of the punitive damages claim: Plaintiff is awarded her costs on appeal.

25. **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.