# Supreme Court of the Navajo Nation

**Edker H. Wilson, d/b/a Edker H. Wilson .
Rodeo Co., and the Northern Navajo Fair Board,
Defendants-Appellants,**

v.

**Victor Begay, Plaintiff-Appellee.**
**Decided March 8, 1988**

## OPINION

Before TSO, Chief Justice, AUSTIN and *YAZZIE (*sitting by designation), Associate Justices.

Thomas J. Hynes, Esq., Farmington, New Mexico, for Appellant Wilson; and Joseph L. Rich, Esq., Gallup, New Mexico, for Appellant Northern Navajo Fair Board; Earl Mettler, Esq., Albuquerque, New Mexico, for Appellee.

Opinion delivered by YAZZIE, Associate Justice.

The defendants, Edker Wilson and the Northern Navajo Fair Board, have appealed the judgment of the Shiprock District Court awarding $75,606.22[1] in damages to plaintiff, Victor Begay, for injuries Mr. Begay received at the 1983 Shiprock Fair. Mr. Wilson provided livestock and some personnel for a rodeo held at the Fair under the Fair Board's management in October, 1983. During the bull riding event, a bull escaped from the arena, and while being pursued by two employees of Mr. Wilson, it crossed highway 666, and struck Mr. Begay, who was walking in the concessions area. Mr. Begay was present at the Fair to sell jewelry at a stand he rented from the Fair Board.

Victor Begay filed suit against Mr. Wilson and the Fair Board in the summer of 1984, asking for $75,000 in damages. After trial, on January 24, 1986, the court entered its findings and judgment. Among the court's findings concerning the bull's escape from the arena are the following: (1) the bull presented a foreseeable risk of danger to the safety of persons in the area in the event it escaped (finding no. 4); (2) the Fair Board was responsible for hiring, training, and supervising the person in charge of opening the stripping gate, by which the bull was supposed to exit the arena (findings no. 10, 11); (3) because the Fair Board did not meet its responsibility adequately, the person in charge of the gate did not open it at the proper time (findings no. 11, 12); (4) the fence enclosing the arena was inade-

---

1. The court awarded Mr. Begay $75,000 in compensatory damages and $606.22 for costs of litigation.

quate. The fence was not of the type used at fairs with large attendances, and it had not been properly maintained, although the cost of proper maintenance would have been reasonable (findings no. 13-17) ; (5) Edker Wilson's employees did not examine the fence or inquire whether the person in charge of the gate was properly trained, and they did not instruct on or oversee the operation of the stripping gate (finding no. 20); (6) Edker Wilson's employees "carelessly" failed to prevent the escape of the bull from the arena after it threw its rider (findings no. 21-23); and (7) Edker Wilson's employees failed to recapture the bull within a reasonable time, and they failed to contain the bull in an area which would have minimized the danger to fairgoers (finding no. 24). Judgment at 2-5.

As a result of these findings, the court concluded as a matter of law that: (1) the Fair Board was negligent in not properly hiring, training, and supervising the person who operated the stripping gate (conclusion no. 5); (2) the Fair Board was negligent in not repairing, replacing, and adequately maintaining the arena fence (conclusion no. 6); and (3) the Fair Board was negligent in not being prepared for the escape of livestock from the rodeo arena, and in not apprehending the bull, and otherwise preventing the injuries to Mr. Begay (conclusion no. 7); and Edker Wilson and his employees were negligent in failing to check the safety of the arena fence, and report that it was unsafe, and in failing to ensure that the stripping gate was correctly operated (conclusion no. 9); and Edker Wilson and his employees were negligent in failing to properly handle the bull after the ride, and in failing to prevent its escape, and to recapture it within a reasonable time (conclusion no. 10) .

In apportioning fault, the court concluded that the Fair Board's and Mr. Wilson's negligence constituted, respectively, 75% and 25% of the proximate cause of Mr. Begay's injuries (findings no. 26, 27; conclusions no. 11, 12).[2] Judgment at 5, 10.

The court also made findings concerning Victor Begay's damages. The court found that, because of his injuries, Mr. Begay was unable to work from October, 1983 until January, 1984. Mr. Begay began to work in January, 1984, and his recovery continued during the summer of 1984. Mr. Begay owns a jewelry manufacturing business. Because he was unable to work, he suffered a loss of income, and had to sell equipment needed for making jewelry. The resulting damage to Mr. Begay's business continued up to the time of the trial. The court determined that, before Mr. Begay's injuries, his jewelry business had an income of approximately $60,000 per year after expenses. Mr. Begay's loss of income also led to the repossession of a tractor, a pickup truck, and other personal possessions, and it caused his family considerable hardship. The effects of Mr. Begay's injuries lasted for several months, which caused him a great deal of pain and which led him to obtain the services of a medicine man. Judgment at 5-8. As a result of these findings, the court concluded that Mr. Begay had "sustained a

---

2. Although the court listed its 75%-25% division of responsibility as a finding of fact, a determination of "fault" is at least partially a conclusion of law.

total amount of damages of $75,000; which were directly and proximately caused by the accident and injury." Judgment at 8.

Edker Wilson and the Fair Board filed notices of appeal on February 21, 1986, and this Court granted the appeal to decide: (1) whether there is sufficient evidence to find the defendants negligent; and (2) whether the evidence was sufficient to support the court's award of damages.

# I. NEGLIGENCE

## A

This Court's review on appeal is limited to questions of law. 7 N.T.C. § 803 (Supp. 1986). Thus, this Court may set aside a finding of fact only if evidence in the record is insufficient, as a matter of law, to support the finding. This Court must uphold the district court's finding of negligence if the evidence most favorable to that finding is sufficient to establish the defendant's negligence.

The legal basis for awarding compensatory damages in Navajo law is 7 N.T.C. § 701 (Supp. 1986),[3] which states in part:

(a) In all civil cases, judgment shall consist of an order of the court awarding money damages to be paid to the injured party . . . .

(b) Where the injury inflicted was the result of carelessness of a party, the judgment shall fairly compensate the injured party for the loss he has suffered.

. . . .

(d) Where the injury was inflicted as the result of accident, or where both the plaintiff and the defendant were at fault, the judgment shall compensate the injured party for a reasonable part of the loss he has suffered.

This Court has held that, "'[c]arelessness' is actually the same legal standard as 'negligence'. . . ."[4] *Mann v. Navajo Tribe*, 4 Nav. R. 83, 85 (1983).

In determining whether a party was negligent, a court must determine whether that party owed a duty of care to the individual who was injured. *Mann v. Navajo Tribe, id.*, illustrates the nature of a person's duty of care for others. There, a police officer driving his official vehicle through tall sagebrush inadvertently drove over an intoxicated man who had fallen asleep on the ground. This Court determined that the officer owed a duty "to conduct police patrol duties in a careful manner, considering the circumstances . . . ." *Mann* at 84. In *Mann*, we held that it was *not* the officer's duty that "he must foresee the possibility of a drunk

---

3. This section was adopted almost verbatim from federal regulations. See, 25 C.F.R. § 11.24 (1987).

4. The Fair Board has argued on appeal that the use of the words, "careless" and "inflicted," in subsection (b) indicates that a positive, careless act which directly inflicts an injury on an individual is necessary for an injury to be compensable. However, when subsections (b) and (d) are considered together, the obvious intent is to establish a comparative negligence standard, rather than to establish a standard for compensation stricter than that of negligence.

4

in the sagebrush at EnemyWay Ceremonies." *Mann* at 85.

The standard of care this Court applied in Mann is consistent with other jurisdictions, where failure to exercise ordinary care in avoiding foreseeable harm to others constitutes negligence. See, e.g., *Latimer v. City of Clovis*, 83 N.M. 601, 495 P.2d 788, 793 (1972). Thus , the duty of care owed by an individual is closely related to the foreseeability that another individual will be harmed. *Ramirez v. Armstrong*, 71 N.M. 288, 377 P.2d 822, 825 (1983); *Chavez v. Tolleson Elementary School District*, 122 Ariz. App. 472, 595 P.2d 1017, 1021-22 (1979). The extent of the duty owed depends on the circumstances. *Latimer*, 495 P.2d at 796. Where the danger of injury to others is greater, so is the duty to exercise care. *Chavez*, 595 P.2d at 1021.

In this case, it is foreseeable that a full-grown bull running through an area crowded with pedestrians would injure someone. There is testimony in the record to support the findings that (1) the fence enclosing the arena was inadequate, (2) the bull would not have escaped if the gate had been operated properly, and (3) the bull would not have escaped if both "pick-up men," who were provided by Edker Wilson to control animals in the arena, had been present in the arena and had done their job competently.[5] It was also reasonably foreseeable that the bull would escape from the arena. This is supported by testimony that the fence was inadequate and the gate operator and the two pick-up men failed to perform their duties properly.

Neither defendant presented expert testimony by an uninvolved party that would establish a standard of "ordinary care" for rodeos, or that would show clearly that the bull's escape was not reasonably foreseeable under the circumstances. In the absence of such testimony, the court was within its discretion, as trier of fact, to draw its own conclusions on these questions based on the evidence before it.

There is sufficient evidence in the record to support the conclusion that Edker Wilson and the Fair Board were negligent by failing to perform their duties with ordinary care under the circumstances. The evidence in the record supports the district court's apportionment of fault. We affirm the district court's finding as to negligence.

B

Edker Wilson argues that his contract with the Fair Board shifts his liability for Mr. Begay's injuries to the Fair Board. That contract established the Fair Board's responsibility for the condition of the arena, and it absolved Wilson from any liability for injuries to "any contestant, spectator, or help furnished by Employer." Contract dated August 30, 1983. However, Victor Begay was neither a contestant, a spectator, nor help furnished by the Fair Board. The contract was a form contract provided by Mr. Wilson, and courts have construed such docu-

5. Robert Wade Wilson, one of two pick-up men provided by Edker Wilson, testified at trial that he was the only pick-up man working in the arena at the time the bull escaped. Tr. at 18.

ments strictly against the drafter. *See* 17 Am. Jur. 2d *Contracts* § 276 (1964). Strict construction is especially common where one party contracts to avoid liability for his own negligence. 17 Am. Jur. 2d *Contracts* § 253.

The contract clearly places responsibility on the Fair Board to provide an arena "which shall be adequately fenced for the protection of all concerned." Contract dated August 30, 1983. However, Mr. Wilson is in the business of providing livestock and personnel for rodeos. Mr. Wilson and his employees have participated in rodeos in many other locations, and his employees were certainly in as good a position as the Fair Board to know that the fence was inadequate. One of Mr. Wilson's employees testified at trial that the type of fence used was not standard, Tr. at 27-28, and that he had "reason to believe that the fence was inadequate." Tr. at 44. Although Mr. Wilson's employees were not responsible for the state of the fence, they were responsible for providing the animals that performed within the fence. The court could reasonably find them negligent for allowing their potentially dangerous animals to be released into the arena when they had reason to believe the fence was inadequate.

The court's apportionment of fault reflected the Fair Board's greater responsibility for the condition of the fence and also reflected the negligent performance of the gate operator. Edker Wilson's liability rests on his employees' negligent performance as pick-up men, as well as on their failure to inspect the fence, and oversee the stripping gate operation. Therefore, the district court's finding that Mr. Wilson was 25% liable for Victor Begay's injuries was proper, notwithstanding the contract between Mr. Wilson and the Fair Board.

## II. DAMAGES

The plaintiff has the burden of proving damages. The plaintiff must first establish with reasonable certainty that the defendant's conduct caused the plaintiff damages. The plaintiff must then establish the amount of his damages with reasonable certainty. The rule within the Navajo Nation is that an award of damages must be based upon proof and not speculation. *Hall v. Arthur*, 3 Nav. R. 35, 40 (1980) .

Where necessary, the plaintiff's testimony can constitute adequate proof of damages, but the testimony must establish all the elements necessary to justify an award of damages. *Deal v. Blatchford*, 3 Nav. R. 159, 163 (1982). A reasonable basis for the computation of all damages must appear in the record. However, the plaintiff need not prove damages with mathematical certainty. Damages may be shown with the best available evidence. As with other factual determinations, this Court must accord considerable deference to damages awarded by the trier of fact. In New Mexico, for example, damages may be reversed on appeal only in extreme cases. *Chavez v. Atchison, Topeka and Santa Fe Railway Co.*, 77 N.M. 346, 423 P.2d 34, 38 (1967); *Hansen v. Skate Ranch, Inc.* , 97 N.M. 486, 641 P.2d 517, 523 (1982).

In this case, the Fair Board argues both that the damage award is excessive and that the award is not supported by sufficient evidence. Damages would be excessive if the evidence viewed in plaintiff's favor does not support the award, or if the damage award is a result of passion, prejudice, partiality, undue influence, or a mistaken measure of damages on the part of the fact finder. Testimony at trial indicated that Victor Begay's business, which had sold some $140,000 worth of jewelry per year before the accident, was forced to close completely for several months. Much of the machinery needed for the business had to be sold, and as a result, the business had not recovered fully by the time of the trial. Several of Mr. Begay's personal possessions were repossessed, and his daughter was unable to return to college. It is possible that $75,000 is reasonable and not excessive damages for the harm Mr. Begay suffered.

The Fair Board argues that damage awards that result from passion or prejudice on the part of the trier of fact must be reversed. However, apart from the size of the award itself, the Fair Board has cited no evidence from the record that would indicate that the district court improperly favored Mr. Begay. We can find no indication of partiality in the record.

We have just established the rule that the plaintiff must prove the amount of damages he suffered with a reasonable certainty. Mr. Begay asked for $75,000 in his complaint, and that is what the court awarded him, but there is no indication that either Mr. Begay or the court attempted to calculate the final award from the various losses testified to at trial. In most cases, it is impossible to assign a specific dollar amount to those individual losses based on evidence in the record.

Mr. Begay is in the best position to measure the extent of his loss , and he must bear the burden of establishing the amount of damages through the best available evidence. The record contains testimony that businesses such as Mr. Begay's often do not keep complete and detailed written records covering every transaction. Mr. Begay testified that he often received in-kind payments. Therefore, the court may not require Mr. Begay to provide documentary evidence to support his claims for lost profits and damage to his business if it appears that such evidence would be incomplete or inaccurate. However, the court must require Mr. Begay to reasonably justify, given the evidence available to him, the damages he is seeking.

For the benefit of the district court on remand, we mention some of the factual questions that must be clarified in order to justify a damage award.

1. Lost profits. Mr. Begay testified that his gross income from his business was about $60,000 per year, and his net income about $30,000 per year. However, he did not estimate his income at the time of the trial. Further, Mr. Begay testified that he had recovered from his injuries by August, 1984, but that he still worked fewer hours than before his injuries. He did not testify whether his working shorter hours was the result of his injuries. This information is necessary in order to compare his expected income with his income after the accident and to determine the amount of income he actually lost because of his injuries.

2. Damage to Mr. Begay's business. Mr. Begay testified that he was forced to sell, under unfavorable market conditions, machinery needed in his business, and that his business had not recovered. He also testified as to his loss in selling the machinery. However, he must provide information on how much the sale of equipment affected his production capacity, and how much it would cost to restore that capacity.

3. Repossessed items. In order to justify damages for the repossessed items, Mr. Begay must present an estimate as to (1) the approximate market value of the items when they were repossessed, and (2) how much he still owed on all the items. The proper measure of damages is the market value of the items at the time of repossession minus the amount still owed, plus any consequential damages.

Mr. Begay must establish his damages with the best available evidence. If the only available evidence is his own testimony, then his personal testimony is adequate, and the defendants have the burden of disproving that testimony. However, courts may not simply pick a figure for damages that seems fair, without some indication of how that figure was calculated. Courts must carefully scrutinize claims for damages even after the defendant's liability has been proven, and the record must contain a reasonable justification for the amount of damages awarded.

The district court's findings as to Edker Wilson's and the Fair Board's comparative negligence is affirmed. The award of damages is reversed, and the case is remanded for further proceedings to determine the proper amount of damages.