632 P.2d 356

**The CITY OF CLOVIS, New Mexico, a municipal corporation, Plaintiff-Appellant,**

v.

**G. C. WARE and Kitty Lee Ware, husband and wife, and All Unknown Claimants of Interest in the Premises Adverse to the Plaintiff, Defendants-Appellees.**

No. 13457.

Supreme Court of New Mexico.

Aug. 13, 1981.

Harry L. Patton, Clovis, for plaintiff-appellant.

Walker & Tatum, Lyle Walker, Clovis, Hinkle, Cox, Eaton, Coffield & Hensley, Harold L. Hensley, Richard E. Olson, Roswell, for defendants-appellees.

## OPINION

FEDERICI, Justice.

City of Clovis (appellant), initiated an action in eminent domain to take a portion of Ware's (appellees') property for the purpose of constructing a sewage disposal plant for appellant. The condemnation action involved 120 acres of a 360–acre tract owned by appellees. The jury returned a verdict for appellees and the trial court entered judgment for appellees. We affirm.

Evidence was introduced and presented to the jury on diminution in value of appellees' remaining land caused by the fact that the condemned land was to be used as a sewage treatment facility. Expert testimony as to damages to appellees ranged from $148,000 to $347,750. The jury found appellees' damages to be $250,000. Subsequent to trial, a member of the jury panel who did not actually serve on the jury signed an affidavit to the effect that during voir dire one of the members who eventually did serve on the jury had told the affiant that she was a friend of appellees. This information was not divulged to the court.

Appellant raises three issues on appeal:

I. Whether there was sufficient evidence to support the jury's verdict;

II. Whether the verdict is invalid due to bias and prejudice of a juror; and

III. Whether the jury could properly consider diminution in value to appellees' remaining land brought about by the fact that a sewage disposal plant was to be placed on that portion of the land which had been condemned.

## I.

■ The parties agree that the proper measure of damages in eminent domain proceedings where there is a partial taking is the difference between the value of the tract immediately before the taking and immediately after the taking. Section 42–1–10, N.M.S.A.1978. *See Board of Trustees v. B. J. Service, Inc.,* 75 N.M. 459, 406 P.2d 171 (1965). The value of the property is determined by considering not merely the uses to which it was applied at the time of condemnation, but the highest and best uses to which it could be put. *City of Albuquerque v. Chapman,* 76 N.M. 162, 413 P.2d 204 (1966).

■ Appellant argues that there is no substantial evidence to show that appellees' property was suitable for rural homesites, nor was there substantial evidence of the sale of homesites in the area where the condemnees' property was located. We disagree. There is considerable evidence in the record concerning sale of rural homesites in the rural areas in the vicinity of Clovis. Appellant's own expert witness testified concerning sale of two homesite lots just east of appellees' property. Appellant's expert also testified that part of appellees' property was suitable for homesites. The only conflict in this regard among the experts was the extent of acreage suitable for homesite development. Substantial evidence means sufficient relevant evidence for a reasonable mind to accept as adequate to support a conclusion. *Toltec Intern., Inc. v. Village of Ruidoso,* 95 N.M. 82, 619 P.2d 186 (1980). There is substantial evidence in the record to support the jury's verdict.

## II.

On voir dire, part of the jury panel was placed in the jury box and the remainder was placed in the front row of the room. According to an affidavit submitted by a member of the panel, one of the jurors who was chosen to serve on the jury stated that she was "very good friends" with the appellees. The fact was never made known to the judge or attorneys due to some confusion over the placement of jurors in two locations in the courtroom.

The record shows that a general question was directed to the entire jury concerning ability to sit and render a fair and impartial

verdict. The juror in question did not indicate any problems in this regard.

■ We agree that parties to a lawsuit are entitled to an impartial jury. *See State v. Cutnose*, 87 N.M. 300, 532 P.2d 889 (Ct. App.1975). The burden of establishing partiality is upon the party making the claim. *See Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1960); *State v. Cutnose, supra*; and *State v. Ford*, 81 N.M. 556, 469 P.2d 535 (Ct.App.1970). Where the evidence of alleged partiality is accepted as true but is insufficient to establish the claim made, the failure of proof requires that the relief be denied. *State v. Chavez*, 78 N.M. 446, 432 P.2d 411 (1967).

■ Here, even if we consider the affidavit as true, it does not establish the partiality of the juror. It shows that the juror was a friend of the appellees. Friendship alone is not sufficient to show that the juror was biased. *See State v. Ford, supra.*

■ In any event, we note the long established rule in New Mexico that affidavits of jurors presented after the jury has been discharged cannot be considered for purposes of impeaching a verdict. *Skeet v. Wilson*, 76 N.M. 697, 417 P.2d 889 (1966). While the affidavit in this case was submitted by a member of the jury *panel* and not a member of the jury which actually heard the case, the public policy reasons for not allowing consideration of the affidavit are similar. *See Goldenberg v. Law*, 17 N.M. 546, 131 P. 499 (1913). At the time the juror made the remarks, all of the members of the panel had been sworn and the panel was undergoing voir dire. This situation is not sufficiently distinguishable from one where the jury has already begun to hear a case to warrant a different conclusion.

### III.

Appellant contends that the jury should not have been allowed to hear or consider evidence concerning the use to which the condemned property was to be put in determining damages to the remainder of appellees' tract, relying upon *Aguayo v. Village of Chama*, 79 N.M. 729, 449 P.2d 331 (1969). In *Aguayo*, the Village of Chama constructed a sewage disposal plant near Aguayo's home. No direct condemnation was involved. Chief Justice Noble stated that the "mere location of the treatment plant in the neighborhood or plaintiffs' land gives rise to no cause of action unless it is a nuisance per se." *Id.* at 730, 449 P.2d at 332. The sewage plant was not a nuisance per se because it was possible to eliminate all offensiveness. Therefore, consequential damages were not available.

The present case involves condemnation proceedings. It does not involve nuisances to adjoining landowners. *Aguayo* is not applicable. Section 42–1–10 states that "all elements which would enhance or dimish [diminish] the fair market value before and after the taking shall be considered even though some of the damages sustained by the remaining property, in themselves, might otherwise be deemed noncompensable."

■■ It is clear that the statute requires the trial court to consider any diminution in the fair market value of the remaining property which occurs as a result of the placement of a sewage treatment facility on the condemned portion of the tract. Expert testimony was introduced into evidence showing that placement of a sewage facility, regardless of whether noxious odors came from the facility, would diminish the value of appellees' remaining land. There is substantial evidence to support the verdict of the jury and the judgment of the trial court.

The trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.