858 P.2d 406

**CITY OF ALBUQUERQUE, a municipal corporation, Petitioner–Appellant,**

v.

**PCA–ALBUQUERQUE # 19 and Chavez Properties, Respondents–Appellees.**

**No. 13155.**

Court of Appeals of New Mexico.

March 19, 1993.

Certiorari Denied May 5, 1993.

David S. Campbell, City Atty., Robert I. Waldman, Kevin J. Curran, Asst. City Attys., Albuquerque, for petitioner-appellant.

Tito N. Quintana, Albuquerque, Michael H. Anderson, Dallas, TX, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for respondents-appellees.

## OPINION

HARTZ, Judge.

The City of Albuquerque (the City) appeals from an award of $246,000 to PCA–Albuquerque # 19 (PCA) and Chavez Properties, a Georgia general partnership (the Partnership), on the City's petition for condemnation. In the condemnation proceeding the City acquired two easements, each measuring five feet by ten feet, on a fifteen-acre parcel (the Property) fronting on the west side of Yale Boulevard across from the entrance to the Albuquerque airport. The Partnership had been using the Property as a parking facility. The City needed the easements to install foundations for support posts for signs above Yale Boulevard directing airport traffic. PCA owned the Property at the time the City filed its petition. The Partnership thereafter acquired the property from PCA.

The City asks for a new trial on the grounds that the district court erred by (1) permitting the Partnership to call expert witnesses who were not disclosed until the first day of trial, (2) permitting Manuel Chavez, one of three partners in the Partnership, to testify as to the value of the Property, and (3) permitting expert witness Frank Bona Sr. to state his opinion of the percentage decrease in value of the Property due to the taking by the City. We summarily reject the City's contentions with respect to the Chavez testimony. We find reversible error in the admission of the Bona testimony. We need not address the City's first claim of error.

## I. CHAVEZ TESTIMONY

The City's brief-in-chief raises interesting challenges to Chavez's testimony. Our review is limited, however, to objections made at trial, SCRA 1986, 11–103(A)(1), and is further limited to only those objections that are referred to in the City's brief-in-chief. SCRA 1986, 12–213(A)(3) (Repl.1992). We have reviewed those objections and find no reversible error.

## II. BONA TESTIMONY

To put the Bona testimony in perspective, we briefly recite the governing substantive law. The parties agree that the proper measure of damages is the difference between the value of the Property immediately before the taking and the value of the Property immediately after the

taking.[1]  *See City of Clovis v. Ware,* 96 N.M. 479, 480, 632 P.2d 356, 357 (1981); *City of Albuquerque v. Chapman,* 76 N.M. 162, 166, 413 P.2d 204, 206–07 (1966); SCRA 1986, 13–704 (Repl.1991) (uniform jury instruction on measure of damages in partial taking). "The value of the property is determined by considering not merely the uses to which it was applied at the time of condemnation, but the highest and best uses to which it could be put." *City of Clovis,* 96 N.M. at 480, 632 P.2d at 357; *accord Chapman,* 76 N.M. at 169, 413 P.2d at 209; SCRA 1986, 13–711 (uniform jury instruction defining fair market value) (Repl.1991); SCRA 1986, 13–714 (Repl.1991) (uniform jury instruction on highest and best use). Determination of the highest and best use should be made with " 'regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.' " *State ex rel. State Highway Comm'n v. Pelletier,* 76 N.M. 555, 560, 417 P.2d 46, 49–50 (1966) (quoting from what is now Julius L. Sackman & Patrick J. Rohan, 4 *Nichols' The Law of Eminent Domain* Section 12B.12, at 12B–117 (rev. 3d ed. 1990) [hereinafter *Nichols*] ).

The Partnership called Bona as an expert witness. Bona had substantial experience in buying, owning, operating and selling off-premises airport parking facilities in several states, not including New Mexico. His first visit to Albuquerque was to testify in this trial. He viewed the Property the morning before he testified. He had arrived in town the preceding night. He testified that the traffic signs supported by the posts on the easements blocked the view of the Property and would distract drivers from noticing signs on the Property. As a result, the value of the Property would be decreased by seven or eight percent.

As explained by trial counsel for the Partnership, the purpose of the testimony was to establish a basis for computing the reduction in the value of the Property caused by the condemnation. Once a figure was set for the value of the Property before the condemnation, one would multiply that figure by seven or eight percent to obtain the reduction in value. In other words, Bona was offered to the jury as an expert on the decrease in the fair market value of the Property resulting from the condemnation.

The City objected on several grounds, including that Bona was not qualified to testify on these matters because of his lack of knowledge of Albuquerque and because of an inadequate foundation for his testimony. The court overruled the objections, although it later sustained an objection to similar testimony by another out-of-state expert witness called by the Partnership.

■ We recognize that a district court has wide discretion with respect to the admissibility of expert testimony in condemnation cases. *See City of Santa Fe v. Gonzales,* 80 N.M. 401, 403, 456 P.2d 875, 877 (1969). Nevertheless, there are limits. We hold that the district court abused its discretion in permitting Bona to testify to his opinion of the percentage decrease in the value of the Property caused by the condemnation. Because Bona lacked knowledge of property values in the vicinity of the Property, he was not qualified to express an opinion quantifying the decrease in value of the Property in either actual dollar or percentage terms.

■ The general rule is stated in 5 *Nichols* Section 23.07, at 23–64 to –65:

While dealers in real estate, local officials and other witnesses who are supposed to have a special expertise and skill in appraising real estate are commonly spoken of as "real estate experts," they are not expert witnesses in the narrower meaning of the phrase. In other words, the general skill and knowledge that such persons are supposed to possess is not, in itself, enough to qualify them to give an opinion of value in an

---

**1.** We need not address whether NMSA 1978, § 42–2–15(A), which provides that the right to damages is deemed to accrue when the petition for condemnation is filed, conflicts with SCRA 13–704. That issue, which was not raised by the parties, is pending before our Supreme Court in *County of Dona Ana v. Bennett, cert. accepted* (N.M. Jan. 9, 1992) (No. 20,308).

eminent domain proceeding. *They must, in addition to such general knowledge, be acquainted with values in the vicinity of the land in controversy,* and be familiar with the property itself, or at least have examined it at or about the time of the taking. (Emphasis added.) (Footnotes omitted.)

*See id.* § 23.04, at 23–36 (non-expert witness must have knowledge of market value in the vicinity); 23.07[3], at 23–87 (expert witness "should detail the circumstances which have given him knowledge of values in the vicinity of the property taken").

■ There may be exceptions to the general rule that an expert witness on value in a condemnation case must be familiar with property values in the vicinity of the condemned land. For example, *Nichols* notes authority for the proposition that if evidence establishes that the full structural value of a building is one item of the market value of the property, then a carpenter not familiar with general property values could testify to the building's structural value. *Id.* § 23.07, at 23–69; *see, e.g., State ex rel. State Highway Comm'n v. Martinez,* 81 N.M. 442, 468 P.2d 413 (1970) (contractor could testify as to reproduction costs of improvements). Yet, the Partnership has not directed us to any authority permitting expert testimony on the value of *land* by one not familiar with local land values, and we have found no such authority ourselves. Perhaps in certain exceptional circumstances a court could properly admit opinion testimony regarding land value (or change in land value) by an expert not familiar with local land values. In this case, however, the Partnership has not shown such exceptional circumstances. The general rule reflects a presumption that local conditions are so likely to affect property values that a person unfamiliar with local conditions could do no more than speculate in providing testimony quantifying value. That presumption was not rebutted here. The record in this case provides no factual basis upon which the district court could have concluded that local conditions would be immaterial to the percentage change in value about which Bona testified. On the contrary, the record suggests at least two respects in which Bona's testimony was speculative.

First, Bona based his estimate of the decrease in value on the reduced visibility of the Property to persons traveling on Yale Boulevard; he said that the traffic signs would distract the attention of travelers and would obstruct their view of the Property. Yet, a number of local factors have an apparent direct relevance to the business consequences of a reduction in visibility of the Property to automobile travelers on Yale Boulevard; e.g., the demand in Albuquerque for off-premises airport parking, the supply of such parking facilities, the percentage of clientele that is repeat business, the percentage of clientele that comes from travel agency referrals, the percentage of clientele that chooses a parking facility while driving to the airport, etc. Bona may have expertise on such matters with respect to cities in which he has owned or managed airport parking facilities, but he did not establish either that such factors are irrelevant to the value of a parking facility or that they are essentially constant from city to city.

■ Secondly, Bona's expertise was limited to off-premises airport *parking facilities.* Although he mentioned that he "occasionally" was involved "on other type of airport property development," he established no expertise with respect to airport property in general and his testimony regarding the percentage decrease in value of the Property was clearly based on the Property's value as a parking facility. His only reference to the effect of the condemnation on other uses of the Property was a comment during his redirect testimony that the condemnation could also affect access to a hotel on the Property. As stated above, however, the value of the Property remaining after condemnation must be based on its *highest and best* use. Even if the condemnation made the Property totally worthless as a parking facility, the owner might be entitled to only a small sum for compensation if the Property would be almost as valuable as a hotel site as it was before condemnation of the easement.

Certainly, expertise regarding the Albuquerque market would be necessary before rendering an opinion on the highest and best use of the Property. *See Pelletier*, 76 N.M. at 560, 417 P.2d at 49–50 (determine best use with "regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future"). We note that no other witness testified that the highest and best use of the Property was as a parking facility. Chavez testified "a higher and better use for the property in question is to build a hotel." He said that he had not acquired the Property primarily to get a parking lot, but as an investment. The City's expert appraiser testified that "the most probable highest and best use of the [Property] is the holding for resale and commercial development," which included, but was not limited to, use as a parking lot.

Our purpose in discussing the shortcomings in the foundation for Bona's testimony is not to suggest that we expect the district court to engage in detailed analysis in determining whether to allow expert testimony on land value in condemnation cases by one who is unfamiliar with the value of land in the locality. Our purpose, rather, is only to indicate the number of potential pitfalls for such testimony. In future cases the general rule for the district court to follow is simply to exclude expert testimony on land value by one who is not familiar with property values in the area. Because we cannot foresee every possible circumstance, we leave open the opportunity for the proponent of such an expert witness to establish exceptional circumstances that justify admission of the expert's opinion. But we expect such circumstances to be rare, if not nonexistent.

In light of the foregoing analysis, we can readily distinguish the cases upon which the Partnership relies to support the admission of Bona's testimony. In *United States v. 77,819.10 Acres of Land*, 647 F.2d 104 (10th Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982), the issue was compensation for the taking of an evacuation estate ("an interest in land enabling the condemnor to require occupants to periodically vacate the land," *id.* at 106 n. 1) in rural range land caused by missile overflights from a local military base. The Tenth Circuit Court of Appeals approved the admission of testimony by an expert witness that the condemnation would reduce by fifty percent the rental value of the land for ranching. His testimony did not provide before-and-after values for the property. The expert witness, however, owned a nearby ranch and was familiar with values of New Mexico ranch property. Moreover, the commission that received the testimony in that case (whose chairman, by coincidence, is a member of this panel) found that the highest and best use of the land was for grazing and ranching. *Id.* at 107; *cf. Coronado Oil Co. v. Grieves*, 642 P.2d 423 (Wyo.1982) (disallowing admission of such percentage testimony). Here, as already stated, Bona had no knowledge of local land values and the testimony at trial would not support a finding that the highest and best use of the land was as a parking lot.

The Partnership cites *City of Santa Fe v. Gonzales*, 80 N.M. 401, 456 P.2d 875 (1969), for the proposition that there is "no fixed or magic number of times the witness must see property in order to form an opinion about it." In that case the city's expert appraiser visited the property on a number of occasions, took photographs, made measurements, etc. Nevertheless, the trial court disallowed his testimony since he had not been inside the apartments. The Supreme Court reversed, stating that the testimony of Rogers was not based on conjecture, speculation, or surmise. The problem with Bona's testimony is not, however, the number of times he visited the property; it is his lack of familiarity with land values in the community.

### III. HARMLESS ERROR

█ Finally, the Partnership contends that any error in the admission of Bona's testimony was harmless because the verdict is supported by other, admissible evidence—namely, the Chavez testimony. It relies on *Levy v. Disharoon*, 106 N.M. 699, 749 P.2d 84 (1988); *Jewell v. Seidenberg*,

82 N.M. 120, 477 P.2d 296 (1970); and *Hansen v. Skate Ranch, Inc.*, 97 N.M. 486, 641 P.2d 517 (Ct.App.1982). *Jewell* discussed harmless error in the context of an erroneous jury instruction. *Levy* and *Hansen* are more in point because they addressed allegedly inadmissible evidence and have language that might seem to support the Partnership's position. Nevertheless, we are confident that the appellate courts in those two cases had carefully reviewed the record and applied the proper test for harmless error when evidence is improperly admitted or excluded. That test appears in SCRA 11–103(A), which states, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" *See* SCRA 1986, 1–061 (Repl.1992). In *Hansen* the court actually found the challenged evidence to be admissible before it applied harmless-error analysis and concluded that the evidence was cumulative. 97 N.M. at 492, 641 P.2d at 523. In *Levy* the court wrote that "any error could not have changed the ... result." 106 N.M. at 705, 749 P.2d at 90.

Bona's testimony was a significant part of the Partnership's case. Only two other witnesses testified as to value. Thomas Shipman, the City's expert, testified that the Property had a value before the taking of $5,115,000, and a value after the taking of $5,114,300—a difference of $700. The other witness, Chavez, accepted Shipman's pre-condemnation value of $5,115,000 and then testified that the Property was reduced in value by $750,000, leaving a value after condemnation of $4,365,000. Using the agreed upon pre-condemnation value of $5,115,000, the percentage decrease in value testified to by Bona translates to a figure between $358,050 and $409,200. The jury verdict was closer to Bona's figures than to either of the figures provided by Shipman and Chavez. Moreover, as noted by Judge Weinstein, "[T]he testimony of one person may have much more of an impact on a judge or jury than the testimony of another, particularly when one witness may be an expert and another may be a party, officer of a party, friend or relative." Jack B. Weinstein & Margaret A. Berger, 1 *Weinstein's Evidence* ¶ 103[06], at 103–80 (1992). Bona was an expert and Chavez was essentially a party. In these circumstances there is a high probability that Bona's testimony influenced the verdict. The improper admission of his testimony affected a "substantial right" of the City. SCRA 11–103(A). We therefore must set aside the judgment.

## IV. CONCLUSION ·

For the reasons stated above, we reverse the judgment against the City and remand for further proceedings consistent with this opinion.[2]

**IT IS SO ORDERED.**

BIVINS, J., (specially concurring).

MINZNER, C.J., (joining in Special Concurrence).

BIVINS, Judge (Specially concurring).

We concur in both the reasoning and the disposition of Judge Hartz' opinion, and write only to point out an additional and related reason for rejecting the Bona testimony.

This Court rejects the Bona opinion testimony on the basis that, because Bona lacked knowledge of property values in the vicinity, he was not qualified to express an opinion quantifying the decrease in value in either actual dollars or percentage terms. The following exchanges would seem to further illustrate why the Bona testimony should have been rejected as incompetent based on lack of qualifications.

■ When asked how he would apply his experience with off-premises airport parking facilities in other states with the particular property he viewed on the morning of trial, Bona said:

A: Well, I tried to look at it if it were my property. And what my—and I had my hard dollars on it and I had signature on it with a banking institution and

---

**2.** The author's sole disagreement with the special concurrence is that he does not believe that the issue discussed in the concurrence was preserved below.

they—I may owe two or three million dollars, what my reaction would be to that sign and how would it affect me personally and financially.... But if any governmental entity were to put a like sign on one of my properties near one of my entrances to my facility, I would have a very negative belligerent attitude about it.

When asked to give a percentage of the total value that the property was diminished by the placement of the signs, the following exchange occurred:

A: May I preface it with some comment?

Q. Certainly. I understand this is subjective.

A: It's difficult to give a precise percentage. It's not an exact science. But I feel that *if it were my property* I would put a percentage of depreciation of the value anywhere between 5 and 10 percent and probably come up with a compromise in between there of maybe 7 or 8 percent. (Emphasis added.)

The property's worth to its owner is an incorrect basis for an opinion. *Utah State Road Comm'n v. Johnson*, 550 P.2d 216, 217 (Utah 1976). "The price fixed by a reluctant owner, not a willing seller, hardly meets the test for evidence of market value which requires a willing seller." *Coronado Oil Co. v. Grieves*, 642 P.2d 423, 434 (Wyo.1982), *supersession by statute on other grounds noted in L.U. Sheep Co. v. Board of County Comm'rs*, 790 P.2d 663, 669–72 (Wyo.1990).

Because Bona based his opinion on a subjective standard—how he would feel if it was his property being condemned—his opinion testimony should have been rejected as incompetent and without proper basis.

■ We realize that the objections lodged at trial technically may not have called to the district court's attention the specific problem discussed above. As noted in Judge Hartz' opinion, the City objected to the Bona testimony on several grounds, including that Bona was not qualified to testify on these matters because of his lack of knowledge of Albuquerque and because of an inadequate foundation for his testimony. While it is correct that an otherwise qualified expert may have his opinion stricken if based on an improper standard, it may not follow that the improper basis or standard automatically renders the witness disqualified as an expert. In this case, we believe it does. When Bona tied his opinion expressly to a non-market value premise, i.e., Bona's own personal feelings, this said that Bona was not qualified to render an opinion on value. Thus, we would add, as an additional ground for holding the Bona testimony incompetent, the fact that, without a market value basis, the witness was not qualified to give an opinion.

MINZNER, C.J., concurs.