**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date:  September 8, 2014

Docket No. 34,366

LIVING CROSS AMBULANCE SERVICE, INC.,

     Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION
and AMERICAN MEDICAL RESPONSE AMBULANCE
SERVICE, INC., d/b/a AMERICAN MEDICAL RESPONSE,
EMERGICARE,

     Appellees.

APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION

Joseph E. Earnest
Tesuque, NM

for Appellant

New Mexico Public Regulation Commission
Margaret Kendall Caffey-Moquin
Lisa Adelman
Santa Fe, NM

for Appellee New Mexico Public Regulation Commission

Miller Stratvert, P.A.
Jennifer Davis Hall
Stephen B. Waller
Albuquerque, NM

for Appellee American Medical Response Ambulance Service, Inc.

**OPINION**

CHÁVEZ, Justice.

1

**{1}** This case is a direct appeal from a final order of the Public Regulation Commission (PRC) granting a permanent certificate to American Medical Response Ambulance Service, Inc. d/b/a American Medical Response, Emergicare (AMR) for both emergency and non-emergency ambulance service in Valencia County. Living Cross Ambulance Service, Inc. (Living Cross) asks this Court to vacate the final order of the PRC, claiming that the PRC acted arbitrarily and capriciously by granting AMR's certificate because there was no evidence of need for non-emergency ambulance service in Valencia County, and because there was insufficient evidence of need for additional emergency ambulance service. Living Cross also claims that the PRC abused its discretion by allowing Living Cross's former attorney to represent AMR in an initial hearing before ruling on its motion to disqualify the attorney. AMR and the PRC ask this Court to affirm, alleging that there was a sufficient showing of public need, and that evidence of need for non-emergency service is not required. Additionally, they contend that any error in allowing Living Cross's former attorney to represent AMR in the initial hearing was harmless, and that Living Cross waived its objections. We hold that the PRC decision to allow the former Living Cross attorney to appear for AMR during the hearing for the temporary permit was contrary to law, and that the wholesale admission of the record from that hearing as evidence in the hearing for the permanent certificate was plain error, requiring reversal. Because we determine that the attorney disqualification issue is dispositive, we do not reach the other issues in this case.

## I.    BACKGROUND

**{2}** There is no hospital in Valencia County. People in Valencia County who are faced with a medical emergency must (1) deal with the emergency itself, and (2) find a way to travel twenty to thirty-five miles to an Albuquerque hospital. Ambulances coming from Valencia County can take two hours or longer to transport a patient to the nearest hospital, process the patient, and return. The long turnaround times mean that ambulance companies sometimes run at full capacity, or "zero status," and cannot respond to calls from new patients because all available ambulances are in use.

**{3}** Since 1987, Living Cross has been the only ambulance company in Valencia County operating under a permanent certificate from the PRC. Living Cross has been at zero status and unavailable to transport patients for less than one percent of ambulance service requests. When Living Cross is at zero status, dispatch requests mutual aid from a nearby ambulance company, and if those mutual aid ambulances are also unavailable, the municipality whose EMTs first responded to the scene must transport the patients at the municipality's expense.

**{4}** AMR is the largest private ambulance company in America. On March 13, 2013, AMR petitioned the PRC for both temporary authority and a permanent certificate to operate from points in Valencia County. AMR alleged that Living Cross was providing deficient service, and that there was an urgent and immediate public need for another ambulance company to fill that void in service. AMR filed affidavits in support of its petition from five people, all of whom were Valencia County EMTs and fire department employees, stating that there had been "numerous times" when Living Cross ambulances were unavailable.

2

AMR also provided responder documentation of particular occasions when Living Cross was unavailable or the response times were too long.

**{5}** Living Cross moved to intervene in the PRC hearings on AMR's application, maintaining that it was not providing deficient service and emphasizing that its ambulance service was unavailable for less than one percent of calls received. It maintained that a less-than-one-percent rate of unavailability is consistent with rates of unavailability that the PRC has previously found to be compliant with regulations for other ambulance companies, and therefore AMR could not show a public need for additional ambulance service. Living Cross further argued that it should be allowed to try to remedy any problems before another company steps in to the Valencia County ambulance services market, potentially driving Living Cross out of business.

**{6}** Living Cross also moved to disqualify AMR's attorney, W. Ann Maggiore, stating that she had previously represented Living Cross in proceedings before the PRC, before this Court, and in a private lawsuit, and that her current representation of AMR in opposition to Living Cross involved "precisely the same issues involved" in those previous matters when she represented Living Cross. In addition, Living Cross pointed out that one year earlier, during a dispute over an operating certificate in Bernalillo County, a PRC hearing examiner disqualified Maggiore from representing AMR against Living Cross because she had been Living Cross's attorney in previous matters, and because the potential that she had learned confidential information she could use against Living Cross created a conflict of interest. In this case, Living Cross requested that the PRC either stay the proceedings on AMR's certification application pending the resolution of the disqualification issue or grant Living Cross an interlocutory appeal to this Court.

**{7}** The PRC neither stayed the proceedings nor granted Living Cross an interlocutory appeal. Instead, the five PRC commissioners held a public hearing on April 3, 2013, during which they decided the application for temporary authority, but postponed consideration of the motion to disqualify. During the day-long hearing, they allowed Maggiore to appear on behalf of AMR, give an opening statement, direct the examination of five AMR witnesses, and cross-examine the Living Cross witnesses. After the hearing, the PRC granted AMR temporary authority and appointed a hearing examiner to determine whether AMR's attorney should be disqualified.

**{8}** On April 15, the appointed hearing examiner recommended Maggiore's disqualification, finding that this proceeding and prior proceedings in which Maggiore represented Living Cross "are substantially related matters within the meaning of Rule 16-109 [NMRA] of the Rules of Professional Conduct. The matters involve the same provider (Living Cross), the same issues (the adequacy of Living Cross's service), the same service area (Valencia County) and certain of the same individuals . . . ." However, the hearing examiner recommended denying Living Cross's motion to strike all materials prepared by or in consultation with Maggiore because Living Cross did not identify specific materials prepared by Maggiore, and because "Living Cross will have the opportunity to object to any

3

incompetent evidence at an appropriate time."

**{9}** On May 1, the PRC adopted the hearing examiner's recommendations on disqualification and ordered that Maggiore be disqualified. The PRC found that AMR's exceptions—that counsel had not used confidential information, that the parties were not adverse, and that disqualification would be extremely prejudicial to AMR—were "not sufficient to overcome the analysis set forth in great detail in the Recommended Order on the conflict of interest presented by the representation of this counsel for [AMR] in the remainder of this proceeding." However, it also denied both Living Cross's motion to stay and Living Cross's motion to strike the materials prepared by Maggiore. By adopting the hearing examiner's recommendations in full, the PRC incorporated the hearing examiner's reasoning for denying Living Cross's motion to strike.

**{10}** The final hearing on the grant of a permanent certificate was held before a hearing examiner on June 27, 2013. The transcript of the entire April 3 hearing was admitted into evidence at the final hearing, as well as written testimony from various witnesses that was taken virtually verbatim from what Maggiore had elicited in the April 3 hearing before the commission. Living Cross did not object to the admission of this evidence. After the final hearing, the hearing examiner recommended that the PRC grant the permanent certificate to AMR, and the PRC again adopted the hearing examiner's recommendations. Living Cross appeals from the final order of the PRC granting the permanent certificate to AMR to operate in Valencia County, NMPRC Docket No. 13-00079-TR-M, September 20, 2013.

## II.    STANDARD OF REVIEW

**{11}** A final order of the PRC under the Motor Carrier Act, NMSA 1978, §§ 65-2A-1 to -41 (2003, as amended through 2013), will be overturned on appeal only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. Section 65-2A-35(C). A decision that is plainly erroneous is not in accordance with law. *United States v. Lujan*, 268 F.3d 965, 967 (10th Cir. 2001) (citations omitted). "In general, we review [a tribunal's] evidentiary rulings for an abuse of discretion when they are properly preserved for appellate review." *State v. Allen*, 2000-NMSC-002, ¶ 17, 128 N.M. 482, 994 P.2d 728 (citation omitted). To preserve an error for appellate review, a party must fairly invoke a ruling from the tribunal. Rule 12-216(A) NMRA ("To preserve a question for [appellate] review it must appear that a ruling or decision by the [tribunal] was fairly invoked."). If an evidentiary issue is not properly preserved, this Court may review for plain error. Rule 11-103(E) NMRA. Plain error will be determined where the error affected a party's substantial rights. Rule 11-103(A); *see also City of Albuquerque v. PCA-Albuquerque #19*, 1993-NMCA-043, ¶ 17, 115 N.M. 739, 858 P.2d 406 (setting aside the judgment because there was a high probability that improper admission of expert testimony influenced the jury's verdict, which affected a "substantial right" of the city (internal quotation marks omitted)). A party is entitled to relief when plain error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Lujan*, 268 F.3d

4

at 967 (alteration in original) (internal quotation marks and citations omitted).[1]

## III.  DISCUSSION

**{12}**  The PRC erred by allowing Maggiore to represent AMR in a day-long hearing despite Living Cross's pending motion to disqualify her. Living Cross's motion to disqualify was timely. Living Cross moved to disqualify Maggiore on March 25, 2013, shortly after receiving notice of AMR's initial application, and specifically requested that the PRC rule on the motion "prior to taking any substantive action" on AMR's application. The PRC should have stayed the proceedings while it or a hearing examiner determined whether AMR's counsel was disqualified. This failure is especially egregious in light of the fact that the PRC was aware that one of its own hearing examiners had already disqualified Maggiore from representing AMR when Living Cross was an adverse party in another proceeding only eight months earlier.

**{13}**  "In the practice of law, there is no higher duty than one's loyalty to a client." *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶ 1, 292 P.3d 466. As such, our Rules of Professional Conduct prohibit attorneys from representing clients where a conflict of interest exists. *See, e.g.*, Rule 16-107(A)(1) NMRA (stating that attorneys cannot represent a client if the representation would be "directly adverse to another client"); *see also* Rule 16-110 NMRA (the conflicts of interest of a single attorney are imputed to the entire firm). The Rules of Professional Conduct place an affirmative duty on attorneys to protect their clients, even after the representation of a client has ended, by not working on cases that are materially adverse to the interests of a former client. Rule 16-109(A) (proscribing an attorney's representation of a client "in the same or a substantially related matter" if the client's interests are "materially adverse" to those of a former client); *Mercer*, 2013-NMSC-002, ¶ 14 ("Clients must be secure in their understanding that attorneys will maintain their confidences, even after the termination of an attorney-client relationship."). We have previously indicated that disqualification based on a conflict of interest should take place before a hearing on the merits under Rule 16-110. *See Mercer*, 2013-NMSC-002, ¶ 39 ("In failing to disqualify the . . . firm, the district court misapplied the plain language of Rule 16-110(C) mandating disqualification. [The client] would have been forced to go through a trial on the merits with the potential of a breach of client confidences. That potential breach is simply unacceptable.").

---

[1]Review of unpreserved error under appellate preservation Rule 12-216(B)(2) does "not preclude the appellate court from considering . . . , in its discretion, questions involving . . . fundamental error or fundamental rights of a party." However, fundamental error applies "solely to prevent a miscarriage of justice," while "review [of unpreserved error] on the basis of plain error is less stringent." *State v. Lucero*,1993-NMSC-064, ¶¶ 12-13, 116 N.M. 450, 863 P.2d 1071 (internal quotation marks and citation omitted). "Plain error, however, applies only to evidentiary matters." *Id.* ¶ 13.

5

**{14}** Other courts have also held that disqualification must be determined prior to moving forward with substantive proceedings. "[W]hen counsel is disqualified, a court should not reach the other questions or motions presented to it through the disqualified counsel." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013). In *Bowers*, the Sixth Circuit Court of Appeals vacated the district court's summary judgment in favor of a defendant where the plaintiff had moved to disqualify the defendant's attorney because another attorney at the firm of the defendant's attorney had previously represented the plaintiff. *Id.* at 649. The court reasoned as follows:

> A district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely. . . . The reason is simple: if counsel has a conflict from previously representing the party seeking disqualification . . . there is a risk that confidential information could be used in preparing or defending the [dispositive] motion. . . . In other words, a potentially conflicted counsel's confidential information could infect the evidence presented to the district court. Therefore, a district court must reach the merits of a disqualification motion before ruling on a dispositive motion.

*Id.* at 654-55 (citation omitted). Thus, once a party moves to disqualify an adverse party's counsel based on counsel's former representation of the movant, all substantive proceedings must cease until the tribunal determines whether counsel is disqualified.

**{15}** In this case, after a thorough record review, the hearing examiner correctly determined that Maggiore was disqualified because she had previously represented Living Cross in "substantially related matters." The hearing examiner discussed a series of substantially related prior proceedings in which either Maggiore or her law firm represented Living Cross, stemming "from an incident in Valencia County . . . [in which] a minor child died at a scene to which a Living Cross ambulance had been dispatched and provided emergency services." First, Maggiore's law firm defended Living Cross in a wrongful death action in which the child's family alleged that a contributing cause of the child's death was Living Cross's delay in arriving on scene. Second, a year after the child's death, PRC staff initiated an investigation of Living Cross, and the PRC ordered Living Cross to show cause why it should not be fined for violations of the Motor Carrier Act because of the child's death. Maggiore defended Living Cross against the show cause order, and her law firm represented Living Cross in the subsequent appeal from those proceedings in this Court. The hearing examiner explained that Maggiore and her law firm "were involved in the discovery and investigation by [PRC] Staff in the Show Cause investigation and proceeding, the discussions related to that investigation, and the wrongful death claim . . . . [T]he issues addressed in those matters encompassed every aspect of Living Cross operations."

**{16}** The hearing examiner quoted Rule 16-109 and correctly characterized the legal standard to be applied to these facts. "Matters are 'substantially related' for purposes of

6

[Rule 16-109] if . . . there . . . is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Rule 16-109 cmt 3. The hearing examiner recognized that not only does the rule require disqualification when factual information was actually disclosed, but that "the prohibition should also be extended to the 'appearance' that confidential information might have been given to the attorney in the prior representation." *See State v. Barnett*, 1998-NMCA-105, ¶¶ 18, 24, 125 N.M. 739, 965 P.2d 323 ("[W]hether there is a substantial relationship turns on the . . . appearance thereof." (internal quotation marks and citations omitted)).

**{17}** Once the tribunal determines that there was a substantial relationship between the former representation and the current proceedings, "an irrebuttable presumption arises that the former client revealed facts requiring the attorney's disqualification." *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992). "The court need not inquire into whether the confidential information was actually revealed or whether the attorney would be likely to use the information to the disadvantage of the former client. To conduct such an inquiry would frustrate the former client's interest in the confidential information." *Id.* (citations omitted). "Doubts as to whether a substantial relationship exists should be resolved in favor of disqualification." *Id.* at 1537.

**{18}** Despite the hearing examiner's finding that ample grounds for disqualification existed in this case, the hearing examiner did not craft an adequate remedy because he put the burden on Living Cross to object to "specific materials" that were prepared by Maggiore. Objecting to specific materials would not have cured the defect because the PRC had already ignored the conflict of interest issue that Living Cross raised and allowed Maggiore to appear on behalf of AMR, give an opening statement, direct the examination of five witnesses, and cross-examine Living Cross's witnesses. On the basis of Maggiore's representation, AMR was granted temporary authority and began operating in Valencia County. Had proper procedures been followed, AMR would have had to procure other counsel before the hearing on temporary authority, and it could not have received the benefit of Maggiore's knowledge of confidential information regarding Living Cross. In this case, objecting piecemeal to evidence that Living Cross believed was tainted by the conflict would in no way vindicate the underlying interests protected by Rule 16-109: preserving client confidences and the fairness of hearings. We must presume that confidential information was used against Living Cross in the first hearing, *see Koch*, 798 F. Supp. at 1536, and that AMR had already gained an advantage by using that impermissible information. Objection at the permanent certification hearing would not change that fact.

**{19}** Another troubling aspect of the procedure in this case is that our review of the record reveals no justification for why the PRC allowed Maggiore to represent AMR at the April 3 hearing in the face of a motion to disqualify her. Commission Chairman Ben Hall stated at the very beginning of the hearing, "the motion to disqualify the counsel filed by Living Cross will not be addressed in this public hearing. Due to the emergency of this proceeding, decision on the motion will be addressed by the Commission during the regular agenda later

7

on today." The PRC did not state any reasons for its characterization of the hearing as an emergency, either in that initial statement or at any time during the proceeding, nor did the PRC explain why the hearing had been conducted on an emergency basis in its written order granting temporary authority issued the following day. The parties did not ask the PRC to hold an emergency hearing. AMR's original application does not appear to include a request to expedite the hearing or to grant temporary authority on an emergency basis, nor did testimony at the hearing establish a need for the hearing to be conducted on an emergency basis. To the contrary, AMR's only two witnesses to address the subject both stated that there were no life-threatening emergencies to date due to Living Cross's alleged failures. Commissioner Espinoza asked AMR's first witness, Valencia County Fire Chief Steven Gonzales, whether he could talk about any life-threatening incidents that had resulted from Living Cross's unavailability. Chief Gonzales responded that "we don't have any that were life-threatening or critical, per se." Division Chief Nicholas Moya of the Valencia County Fire Department also stated, "[l]uckily, for the majority of the part there haven't been too many life-threatening injuries, but it's only going to take that one where we have nobody to respond that's going to make a difference." On this record, it is not possible to discern why the PRC maintained that it was acting in an emergency situation such that the Rules of Professional Conduct should suddenly cease to apply. This procedure was entirely inadequate in protecting the integrity of the judicial process.

**{20}** After Maggiore was disqualified, AMR submitted pre-filed testimony as exhibits in support of its application for permanent authority. That testimony was nearly a word-for-word transcription of the direct examinations Maggiore conducted at the April 3 hearing. At the opening of the final hearing, AMR moved into evidence a complete transcript of the entire April 3 hearing. The pre-filed testimony was separately admitted into evidence during the final hearing as well, although the substance of that testimony consisted of the questions Maggiore posed to witnesses in the April 3 hearing and the answers the witnesses gave to her questions.

**{21}** Living Cross objected neither to the admission of the pre-filed testimony nor to the admission of the entire contents of the April 3 hearing, arguing in this appeal that such objection would have been pointless before a hearing examiner who has no independent power to exclude testimony that the PRC had already allowed. Living Cross did raise the objection again in its exceptions to the recommended decision after the hearing examiner issued her recommended decision, which was filed with the PRC. AMR contends that Living Cross's failure to make a timely objection waived the objection. Nevertheless, the PRC's error in failing to disqualify Maggiore prior to conducting substantive proceedings is an error that runs directly contrary to the procedure mandated by case precedent and the mandates of our Rules of Professional Conduct. Indeed, the PRC had the benefit of our December 2012 opinion in *Mercer*, in which we instructed tribunals not to proceed with any substantive matters until it decided the merits of a pending motion to disqualify counsel. 2013-NMSC-002, ¶ 39.

**{22}** Failing to stay the proceedings until a determination of whether counsel was

disqualified was "simply unacceptable," *id.*, and we accordingly hold that the PRC committed reversible error when it allowed a potentially disqualified attorney to conduct a hearing over the objection of opposing counsel. We take this opportunity to stress the absolute importance of the conflict of interest provisions of the Rules of Professional Conduct. It is essential that a tribunal determine whether an attorney or a law firm is disqualified from a case immediately upon being alerted to a potential conflict of interest. Until that determination is made, no further proceedings may take place. Conflicts of interest, left unchecked, could taint an entire case and call into question the integrity of the attorney-client relationship. A potentially conflicted attorney has a duty to step down from the case immediately upon discovering the conflict of interest. If the attorney flouts his or her professional duty to do so, the tribunal has a duty to immediately stay the proceedings to determine whether a conflict exists. Failing to stay the proceedings was error that seriously affected the fairness, integrity, or public reputation of the proceedings. Living Cross should have persisted in its objection to the admission of any evidence elicited by Maggiore, even before the hearing examiner. Nevertheless, because the PRC ultimately concluded that Maggiore did have a conflict of interest, it was plain error for the PRC to admit the pre-filed testimony and the entire contents of the April 3 hearing as evidence in the permanency hearing. We reverse and vacate the grant of temporary authority and the permanent certificate to AMR without prejudice to AMR's right to file a new application under current law for temporary authority and/or a permanent certificate.

## IV.   CONCLUSION

**{23}**     The PRC erred when it allowed an attorney to represent a party in a day-long hearing, including direct and cross-examination of eight witnesses, when opposing counsel had previously moved to disqualify that attorney for a conflict of interest. The wholesale admission of the record from the hearing for a temporary permit as evidence in the hearing for a permanent certificate was plain error. Accordingly, we vacate the grant of temporary authority and the permanent certificate to AMR. AMR may file a new application for a permanent certificate to operate in Valencia County according to the laws in effect at the time of the new application.

**{24}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Senior Justice**

9

_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**